The complaint alleges: That on 1 December, 1927, W. J. Shuford was appointed receiver of the insolvent Y. B. Corporation, with full authority "to collect accounts, settle claims, institute and prosecute suits, and bring such actions at law and in equity as the interest of its creditors and the facts of the case may warrant."
The defendant, J. C. Brown, in the year 1926 was a stockholder in the said corporation and held 60 shares of preferred stock and some common stock standing in his name on the books of the corporation. That the outstanding preferred stock at that time amounted to 40,000 shares at the par value of $10 a share; that at the time it had no real or substantial value; "that the said Y. B. Corporation in the year 1926, had no property and assets over and above its outstanding indebtedness, or none which was available to either purchase or redeem and cancel its stock or any part thereof, which facts were known to the defendant, J. C. Brown, or he had sufficient knowledge or information to put him upon inquiry as to the financial condition of the corporation, notwithstanding which, and desiring and designing to obtain a preference over all other stockholders of the same class and to gain advantage over them in the distribution of the assets of the corporation, and to procure from the corporation money, bonds or other things of value in exchange for his stock, which he knew, or should have known, had no actual or market value, the defendant wrongfully and unlawfully prevailed upon the officers of the corporation, or one or more of them, to take up his aforesaid stock at par by paying to him cash out of the *Page 19 
treasury, and thus unlawfully obtained and thus received the sum of $625 of assets of the corporation in violation of law and of his relationship and duty to the creditors thereof, and to those other persons, stockholders of a like class to him or in a class preferred to the stock held by him. That no steps had been taken by the corporation through its directors and stockholders to decrease its capital stock under the provisions of section 1131 of the Consolidated Statutes of North Carolina, or under section 1161 thereof, or any other provisions of law, but the transaction hereinbefore mentioned was wholly unauthorized and unlawful, and in violation of the express terms of the statutes under which the corporation was chartered; that in the way and manner above described the assets of the corporation were greatly reduced and depleted and it and its creditors were endamaged in the sum of $625, and there are now in the hands of the plaintiff, receiver, insufficient assets to meet the legitimate claims of creditors," etc.
The prayer of plaintiff is to recover from defendant $625 and interest thereon from 20 April, 1926. The defendant denies the material allegations of the complaint. As a further answer and defense the defendant denies that he either directly or indirectly sold stock of any kind to the Y. B. Corporation. That the said stock, in the sum of $625 was "sold to J. A. Yarborough by the defendant, as he had a right to do; that the said sale of said stock was in all respects a personal transaction between this defendant and J. A. Yarborough as individuals; that at the time said sale was consummated the said J. A. Yarborough executed and delivered to this defendant in payment of said stock his personal notes, which this defendant accepted in good faith as the personal obligation of the said J. A. Yarborough. That in the purchase of said stock and the resale of the same, as aforesaid, the defendant acted in the utmost good faith, believing that the said Y. B. Corporation was at all times amply solvent, with a large accumulated surplus, and that the defendant further believed at all times, and now believes that said resale was made to J. A. Yarborough as an individual, and not for or on behalf of the said Y. B. Corporation; that if, in the repurchase of said stock, the said Yarborough was acting for the said corporation and not for himself, then the said Yarborough was acting in the capacity of agent for an undisclosed principal, and without notice to this defendant, then or afterwards, of his said agency, and without notice that he was acting in a representative capacity; that the defendant was at no time advised, or put upon inquiry, that the said corporation was negotiating the repurchase of said stock through the said Yarborough as agent, and the defendant verily believed, and now believes and so alleges that the said J. A. Yarborough repurchased said stock for his own individual use and profit, and not with the intent that the same should at any time become the property of said corporation." *Page 20 
For a further answer and defense, the plaintiff alleges that he purchased Y. B. Corporation stock at the solicitation of the agent of the Y. B. Corporation, representing to him that the Y. B. Corporation was solvent, accumulating large profits in its business and it was paying 8 per cent dividends on the stock. That relying on these representations, which were false, he purchased the stock paying par for same and gave his note in payment to the Y. B. Corporation. "That the said corporation designed and perpetrated a wilful and malicious fraud upon the defendant as to the true financial condition of said corporation in the sale of said stock to this defendant; that by reason of said fraud which the plaintiff-receiver alleges was perpetrated, this defendant, in the first instance, was induced to purchase said stock by false and fraudulent representations, made with the design, intent and purpose that the defendant might, and did, purchase said stock which was known to the corporation to be worthless. . . . That if it had been made known to the defendant at the time he purchased said stock, or at any time prior to the resale of the same, that the said corporation was insolvent and was paying out the corpus of the corporate property under the guise of dividends, the defendant could have, and would have, repudiated his purchase of said stock, and could have and would have, recovered the purchase price thereof in an action against the said corporation. That if the defendant's resale of said stock to J. A. Yarborough, as aforesaid, was, in law, a sale to the said corporation, which is denied, then by reason of the fraud perpetrated upon the said defendant in the sale of said stock to him in the first instance, said stock having no value as the plaintiff-receiver alleges, the defendant has received in said resale only the sum to which he was entitled, and could have recovered in an action against the said corporation, and this defendant sets up the aforesaid false and fraudulent representations by which he was induced to purchase said stock in the first instance in defense of the plaintiff's right to recover in this action. That if said resale of the defendant's said stock to the said J. A. Yarborough, as aforesaid, was, in fact and in law, a sale to the said corporation, which is denied, then the said corporation, its officers and stockholders, ratified said resale, knowing the same to have been made, which said resale, as the defendant is informed, believes and alleges, is noted on the stock book of said corporation and imports actual notice to the said corporation, its officers and stockholders."
By reason of the facts alleged, the defendant pleads ratification and estoppel in bar of recovery.
For a further answer and defense, set-off and counterclaim, defendant alleges: "That if the plaintiff-receiver is permitted to repudiate the said resale of said stock, and to recover judgment against the defendant *Page 21 
for the resale price thereof, then the defendant is the innocent victim of a wilful and malicious fraud by reason of which the said defendant has expended money for worthless stock, suffered loss, and incurred liability thereon, in the sum of such judgment as the plaintiff may recover, which said sum with interest thereon from the date of said resale the defendant is entitled, in law and equity, to set up in this action as a set-off and counterclaim against any sum that the plaintiff may recover by reason of the matters alleged in his complaint, and which said sum the defendant sets up as a set-off and counterclaim against the plaintiff's alleged claim.
The prayer of defendant was, "Wherefore, the defendant prays:
(1) That the plaintiff's alleged cause of action be dismissed; that the defendant go without day and recover of the plaintiff his costs.
(2) That if the plaintiff is permitted to recover judgment against the defendant in any sum by reason of the matters alleged in the complaint, that the said judgment be credited with a like sum as a set-off and counterclaim against the plaintiff by reason of the matters alleged by the defendant.
(3) For such other and further relief as the defendant is entitled to receive."
In the reply plaintiff denied the material allegations set forth in the further answers, defenses, set-off and counterclaim, of defendant.
The issue submitted to the jury and their answer thereto was as follows:
"1. Is the defendant indebted to the plaintiff, and if so, in what amount? Answer: Yes, $625 and interest from 20 April, 1926."
Judgment was rendered for plaintiff on the verdict. The defendant made numerous exceptions and assignments of error. The material ones and necessary facts will be considered in the opinion.
At the close of plaintiff's evidence and at the close of all the evidence, the defendant in the court below made motions for judgment as in case of nonsuit. C. S., 567. The motions were overruled by the court below. We think the motions should have been allowed. It is conceded on the record that the assets of the corporation are insufficient and will pay the general creditors only about 20 cents on the dollar.
The Y. B. Corporation was chartered in December, 1923, and operated until 31 October, 1927. The corporation during its existence issued approximately $400,000 of preferred stock and $200,000 common *Page 22 
stock, par value of $10 per share, and when placed in the hands of the temporary and then permanent plaintiff-receiver, 1 December, 1927, the general indebtedness was $309,399.57.
Dividends of 8 per cent paid in 1926 quarterly by Y. B. Corporation to the stockholders amounted to $50,310. J. A. Yarborough was president and treasurer of Y. B. Corporation from its organization until the receivership. He was actively connected with its management. In reference to the controversy over the $625 sued for in this action, defendant J. C. Brown testified in part: "I sold it to J. A. Yarborough on 20 April, 1926. I delivered the certificates to J. A. Yarborough on that date. I took four notes for the stock, $625 each, three, six, nine and twelve months, that is the way the notes were given me. J. A. Yarborough was the maker of these notes. These notes were paid. I can't recollect when the first one was paid, but as I mind it was 19 or 20 July, 1926, about the time it was due it was taken up; it was due three months from date. I don't know how it was paid, but I put it in the Union National Bank; it was collected there. I never saw the check with which it was paid; the bank sent me a credit slip. I borrowed some money and put up my own note as collateral; when it came due they took out their note and sent me the balance. As to how the transaction was done, I can't say. This is the note to which I refer that I put up at the bank and used Yarborough's note as collateral. I put the notes in the bank as they became due. The first one I put in when I borrowed some money, as collateral; the other two I put up for collection. I looked to Mr. Yarborough for payment of the notes given me in payment of stock. I made an investigation at that time as to Mr. Yarborough's ability to pay. I made investigation from Mr. Victor, at the Union National Bank. I think he is the president of the bank. At that time I had no intimation as to whether or not the corporation was in a failure condition. I believed it to be solvent. I sold on 20 April, 1926, and I really didn't know, only what I heard here; it was October, 1927, it went in the hands of receiver. It was some eighteen months."
J. A. Yarborough testified as to the purchase of the stock from Brown as follows: "On or about 20 April, 1926, I purchased certain shares of stock from defendant, J. C. Brown. The three certificates of stock shown me are the certificates I purchased from J. C. Brown. Common stock certificate No. 201, 20 shares; common stock certificate No. 414, 30 shares; common stock certificate No. 318, 80 shares. I do not know where preferred stock certificate No. 639 is. As to whether or not I purchased that certificate from Mr. Brown, I would rather refer to the books. Referring to the Y. B. Corporation Journal, as appears on page 229, and the Stock Subscription Record, I purchased preferred certificate No. 629, 120 shares, from J. C. Brown. The certificates of *Page 23 
stock I have identified as being purchased by me were delivered on 20 April, 1926. I gave Mr. Brown $2,500 for this stock. I paid for it in a year; gave him four 90-day notes, three months apart, $625 each. These were my personal notes."
After a careful review of the record, we can find no competent evidence on the part of the plaintiff to show that this stock was purchased by the Y. B. Corporation. Brown's stock was canceled and in lieu thereof the stock was issued to Yarborough. The auditor testified: "In making my audit I found that J. A. Yarborough had a personal account that ran along throughout the entire history of the corporation. J. A. Yarborough had a personal account with the corporation at the time this stock is alleged to have been sold, as well as I can remember. I think he had from that date up to the date of the receivership."
There is no evidence that defendant knew, or in the exercise of due care could have known, that the corporation was insolvent during the period of the above transaction. It was paying an 8 per cent dividend. There is no evidence of bad faith, fraud or collusion on the part of the defendant, and there is no evidence that Yarborough misused any of the funds of the corporation in this transaction in the payment of said notes. There is evidence, so stated by the auditor, that he (Yarborough) had a personal account with the corporation during the period of this transaction, but it does not appear that said account was ever overdrawn.
The complaint and trial of this action was on the theory that the stock was sold by defendant Brown to the Y. B. Corporation. We can find no sufficient evidence on the record to support this position of plaintiff. All the evidence is to the effect, record and otherwise, that it was purchased by J. A. Yarborough and he gave defendant four notes in payment. After these notes were given, they were paid by Yarborough. As stated, when the sale of the stock was made, on 20 April, 1926, by defendant Brown to Yarborough, there was no evidence that defendant knew, or by due care could have known, that the Y. B. Corporation was insolvent. In fact, the record discloses that during that year, 1926, it paid an 8 per cent dividend, 2 per cent quarterly, which amounted to $50,310. After the sale by Brown to Yarborough of the stock which he had a perfect right to do, and taking his notes, Brown was a stranger to the corporation and looked alone to Yarborough for payment of the notes. If any of these payments came out of the funds of the corporation, there is no evidence in this record that Yarborough, who the corporation trusted to properly check on it, that same did not belong to Yarborough for services or otherwise.
Plaintiff introduced no evidence that Yarborough, who was president and treasurer of the corporation, was not authorized to pay these *Page 24 
personal notes of his by giving a check on the corporation, and did not have funds due him which he had a right to use in payment to Brown of the personal notes he gave him. If Yarborough had no right to use the money of the Y. B. Corporation to pay Brown, then in that event the receiver would have the right to sue Yarborough. The record discloses that Brown sold the stock in good faith to Yarborough and took the four notes in payment. It further discloses, and is so stated by the auditor, that during the period in which these notes were paid, that Yarborough had a personal account with the Y. B. Corporation. The Y. B. Corporation elected Yarborough its president and treasurer and put it in his power to issue checks on the corporate funds. Brown, without collusion, but in good faith, as shown by the record, sold this stock to Yarborough. If Yarborough paid him with the funds of the corporation, under the facts and circumstances of this case, the principle of law applicable is fully set forth in Bank v. Liles,197 N.C. 413, citing numerous authorities, and quoting from R. R. v.Kitchin, 91 N.C. at p. 44: "Where one of two persons must suffer loss by fraud or misconduct of a third person, he who first reposes the confidence or by his negligent conduct made it possible for the loss to occur, must bear the loss." Lightner v. Knights of King Solomon, 199 N.C. 525.
The question arises, if one of two persons must suffer loss by the misconduct of Yarborough, Brown or the Y. B. Corporation, on whom shall the loss fall? On Brown or on the Y. B. Corporation represented by the receiver in this action? We think it should fall on the Y. B. Corporation, as it was responsible in the selection of Yarborough as its president and treasurer, the first reposed the confidence.
It is the well settled law in this jurisdiction, as set forth in Penderv. Speight, 159 N.C. 612: "An insolvent corporation cannot buy in its own stock, and if it becomes insolvent after such purchase the stockholder is held liable to the creditor for the purchase money received by him. Heggiev. Building Loan Asso., 107 N.C. 581. It is generally held that a corporation cannot settle with its members by the application of assets to the retirement of their stock until it has first discharged all of its liabilities, and any agreement looking to such arrangement among its shareholders is void as to creditors." Fuller v. Service Co., 190 N.C. at p. 658.
This principle is sound and salutary, but not applicable on this record. The evidence in the present action was to the effect that Yarborough purchased the stock from Brown and not the Y. B. Corporation. The entire evidence on the part of plaintiff was a type of hearsay evidence, the material part duly objected to by defendant, such evidence should be admitted with caution. The auditor testified: "I found that the books and records of the corporation were in right much of a jumble. *Page 25 
. . . Yes, I find some explanation why this entry should have been made three months after the transfer of stock. When I conducted the examination I frequently ran into that condition where a transaction had happened, not only stock, but everything."
In R. R. v. Hegwood, 198 N.C. at p. 315-16: "Dean Wigmore in discussing exceptions to the hearsay rule — regular entries — in Vol. 3, 2 ed., at p. 281-2, says: `The rulings upon the subject are not yet harmonious: (a) There are, first, a number of States accepting with practical completeness the conclusions above reached, i. e., in given cases admitting verified regular entries without requiring the salesman, timekeepers, or other original observers having personal knowledge, to be produced or accounted for. (b) There are rulings admitting verified regular entries after a showing that the original observer was deceased; possibly absence from the jurisdiction, insanity, or the like, would equally have sufficed.'" Supply Co. v. McCurry, 199 N.C. 799.
Some of the cases in reference to hearsay evidence are set forth in R.R. v. Hegwood, supra. For some other authorities, see Kello v. Maget,18 N.C. 414; Sloan v. McDowell, 75 N.C. 29; Ball-Thrash Co. v. McCormick, 162, N.C. 471; Mercer v. Lumber Co., 173 N.C. 49; Lumber Co. v. LumberCo., 176 N.C. 500; S. v. Hightower, 187 N.C. 300.
Defendant objected to the issue submitted and excepted, but did not tender other issues. He cannot now complain. Greene v. Bechtel,193 N.C. 99-100. This is not material from the view we take of the case. Defendant's further answers and defenses, set-off and counterclaim, are such that are equitable and appeal to a court of equity. The defendant Brown testified as to the fraud perpetrated on him in the sale of the stock by the Y. B. Corporation, fully sustaining his allegations in his further answers and defense and set-off and counterclaim against the plaintiff's alleged claim. Taking the entire evidence, as appears on the record, we see no legal or equitable claim that plaintiff has against the defendant. The auditor was asked the following question by defendant: "Q. Have you any record of the amount paid to the stock salesmen of the corporation? (Objection by plaintiff; sustained.) The witness, if permitted to answer would have said $152,928.18." Mere scintilla of evidence, or evidence raising only suspicion, conjecture, guess, surmise or speculation, is insufficient to take a case to the jury. Denny v. Snow, 199 N.C. 773. The judgment of the court below is
Reversed. *Page 26