R.T. HUDGINS, Plaintiff v. G.W. WAGONER, JR., and W.K.S. CORPORATION, Defendants

No. COA08-1004

(Filed 15 June 2010)

**1. Statutes of Limitation and Repose—fraud—reasonable diligence**

In a fraud action involving activities by real estate partners in which the statute of limitations was raised, the trial court correctly denied defendant's motion for JNOV and allowed the jury to determine whether plaintiff exercised reasonable diligence to discover defendants' activities.

**2. Fraud—pleading—misrepresentation—sufficiently particular**

Plaintiff's complaint alleging fraud between real estate partners was sufficiently particular where plaintiff alleged that a misrepresentation was made during a conversation and that defendants purchased and hid property from plaintiff, entitling him to compensatory and punitive damages.

**3. Fraud— misrepresentation—evidence—not overly vague**

Plaintiff's evidence of a false representation was not too vague to support a claim of fraud between real estate partners

HUDGINS v. WAGONER

[204 N.C. App. 480 (2010)]

where defendant Wagoner told plaintiff that he would be informed if they were going to extend the option or do anything else on the property.

**4. Fraud— intent to deceive—evidence—more than scintilla**

There was more than a scintilla of evidence in a fraud action from which the jury reasonably could have concluded that defendant Wagoner intended to deceive plaintiff and had no intention of complying with his statement that he would let plaintiff know if they were going to extend an option or do anything else on a property.

**5. Fraud— reasonable reliance—defendant's statement— plaintiff's action**

A jury could have found reasonable reliance by plaintiff on defendant's statement in a fraud action involving real estate partners where plaintiff regularly searched Multiple Listing Service reports after defendant Wagoner told him that he would be informed if anything was done with the property.

**6. Damages and Remedies— fraud—real estate partners— profits**

There was sufficient evidence to determine damages in a fraud action between real estate partners where the jury heard evidence from both parties about defendants' profits. Furthermore, the amount of damages was neither excessive nor contrary to law.

**7. Damages and Remedies— fraud—punitive damages—JNOV denied**

The denial of defendants' motion for a JNOV in a fraud action on the issue of punitive damages was reversed and the matter was remanded where there was no written opinion stating the trial court's reasons for upholding the final award.

**8. Civil Procedure— motion for new trial—allegation untimely plead**

The trial court did not err in a fraud action by denying defendants' motion for a new trial based on plaintiff's untimely identification of an alleged misrepresentation that purportedly had not been pled with sufficient particularity.

HUDGINS v. WAGONER

[204 N.C. App. 480 (2010)]

**9. Evidence— prior bad conduct—civil fraud—unrelated felony**

> The trial court did not err in a fraud action by allowing the jury to hear testimony concerning an unrelated felony to which defendant Wagoner had pled guilty. The only information the jury heard was that Wagoner had lost his real estate broker's license; all information about the felony was discussed outside the presence of the jury.

**10. Trials— closing argument—attorney's belief—no intervention ex mero motu**

> The trial did not abuse its discretion in a fraud action by not intervening *ex mero motu* in plaintiff's closing argument. The argument included statements that could be construed as the attorney's personal belief that defendant Wagoner was lying, but did not actually say that the Wagoner was lying.

Appeal by defendants from orders and judgment entered 27 February 2008 by Judge Paul C. Ridgeway in Alamance County Superior Court. Heard in the Court of Appeals 11 February 2009.

*Benson & Brown, PLLC, by Drew Brown, for plaintiff-appellee.*

*Smith Moore Leatherwood, LLP, by James G. Exum, Jr., Bruce P. Ashley, and Stephen M. Russell, Jr., for defendants-appellants.*

JACKSON, Judge.

The W.K.S. Corporation ("WKS") and its president, G.W. Wagoner, Jr. ("Wagoner") (collectively, "defendants"), appeal the 27 February 2008 orders denying defendants' motions for judgment notwithstanding the jury's verdict ("JNOV") and for a new trial. For the following reasons, we affirm in part, reverse in part, and remand with instructions.

R.T. Hudgins ("plaintiff"), a real estate agent, and WKS entered into a partnership agreement in June 1999. Wagoner is and at all relevant times has been the president of WKS. The sole purpose of the partnership between plaintiff and WKS was to acquire certain property in the city of Burlington, North Carolina ("the Property") for the purpose of profit through real estate trading and development. The partners agreed to share all costs and all benefits equally. In order to facilitate its purchase, the partnership paid money for a temporary,

exclusive option to purchase the Property. When that option expired, it was renewed. Each option cost $5,000.00 and was paid equally by plaintiff and by defendants.

When the second option was nearing expiration, plaintiff and Wagoner discussed whether they would renew the option again. On or about 28 June 2000[1], plaintiff told Wagoner that plaintiff would agree with whatever decision Wagoner made concerning renewal of the option. Wagoner told plaintiff that, if they were going to extend the option or do anything else with the Property, Wagoner would contact plaintiff and let plaintiff know. Shortly after this conversation, defendants' attorney contacted plaintiff and offered to buy him out of the partnership for $2,000.00.[2] Plaintiff declined. To the best of plaintiff's knowledge, no further actions were taken by or on behalf of the partnership after that time, although the partnership was never dissolved formally. Plaintiff had no communications with defendants or their agents after that time, until initiation of these legal proceedings.

In late June or early July 2000, at the expiration of the partnership's option, WKS entered into a new option to purchase the Property. Plaintiff was not informed of this action. Through CD&J of Burlington, LLC ("CD&J"), another company of Wagoner's, Wagoner purchased the Property for approximately $300,000.00.[3] Subsequently, a portion of the Property was sold to Dr. Sans for $300,000.00. At the time of trial in February 2008, a large portion of the Property was under contract, with Karing Construction agreeing to buy portions of it for more than $3.5 million. A small portion of the land still is owned solely by Wagoner and his companies; Wagoner estimated the value of this land to be approximately $150,000.00 to $175,000.00. Although the housing development has had problems

---

1. Plaintiff's amended complaint refers to a conversation between plaintiff and Wagoner on 28 June 2000. Other materials provided in the record refer to the meeting as having taken place in "late June 2000." For clarity, we adopt 28 June 2000 as the date of the conversation between plaintiff and Wagoner.

2. There is a discrepancy in the record as to whether $2,000.00 or $2,500.00 was offered to plaintiff to buy him out of the partnership. However, the precise amount of the offer is immaterial to our analysis in the case *sub judice*.

3. The closing document lists the price as $310,000.00. This number takes into account the two $5,000.00 options paid by the earlier partnership between plaintiff and WKS. This appears to indicate that plaintiff's money was used to buy the land. Wagoner claimed in court that this number was an overstatement and was his attorney's method of "accounting for this closing and accounting for [Wagoner's] $5,000.00 that was in there with [plaintiff's]."

and is not expected to show any profit, on 30 March 2007 Wagoner estimated his profit to be $700,000.00.

In October 2006, a friend of plaintiff's, who happened to drive by the Property, called plaintiff to tell him that he observed activity on the site. Plaintiff then learned that Waterfalls, LLC, ("Waterfalls") another of Wagoner's companies, had a sign on the Property. Plaintiff, having learned of the actions taken by defendants, brought suit against Wagoner, WKS, Waterfalls, and CD&J, alleging breach of partnership agreement, breach of fiduciary duties, unjust enrichment, and fraud.

Upon defendants' motion, the trial court dismissed (1) all claims against Waterfalls and CD&J and (2) the claims of breach of partnership agreement, breach of fiduciary duty, and unjust enrichment against defendants. The issue of fraud by Wagoner and WKS went to the jury. The jury found for plaintiff, awarding plaintiff $250,000.00 in compensatory damages and $250,000.00 in punitive damages. Defendants moved for JNOV and, in the alternative, for a new trial. The trial court denied both motions. Defendants appeal.[4]

I.

On appeal, defendants first make several arguments that the trial court erred by denying their motion for JNOV: (1) that plaintiff's fraud claim is barred by the statute of limitations, (2) that plaintiff failed to plead and prove fraud properly, (3) that plaintiff did not present sufficient evidence for the jury to determine damages, and (4) that the jury's award of punitive damages was improper. We disagree as to (1) through (3), and, for the reasons set forth below, we reverse and remand as to (4).

[1] Defendants first argue that the trial court erred in not granting their motion for JNOV.

On appeal the standard of review for a JNOV is the same as that for a directed verdict, that is whether the evidence was sufficient to go to the jury. The hurdle is high for the moving party as the motion should be denied if there is more than a scintilla of evidence to support the plaintiff's *prima facie* case.

*Tomika Invs., Inc. v. Macedonia True Vine Pent. Holiness Ch. of God, Inc.*, 136 N.C. App. 493, 498-99, 524 S.E.2d 591, 595 (2000) (citations omitted). However, a "[m]ere scintilla of evidence, or evidence

---

4. Plaintiff appealed on other grounds, but subsequently dismissed his appeal.

raising only suspicion, conjecture, guess, surmise or speculation, is insufficient to take the case to the jury." *Shuford v. Brown*, 201 N.C. 17, 25, 158 S.E. 698, 702 (1931). Furthermore,

> "[i]n considering any motion for directed verdict [or JNOV], the trial court must view all the evidence that supports the non-movant's claim as being true and that evidence must be considered in the light most favorable to the non-movant, giving to the non-movant the benefit of every reasonable inference that may legitimately be drawn from the evidence with contra-dictions, conflicts, and inconsistencies being resolved in the non-movant's favor."

*Jones v. Harrelson & Smith Contr'rs, LLC*, 194 N.C. App. 203, 214, 670 S.E.2d 242, 250 (2008) (quoting *Bryant v. Nationwide Mut. Fire Ins. Co.*, 313 N.C. 362, 369, 329 S.E.2d 333, 337-38 (1985)), *aff'd*, 363 N.C. 371, 677 S.E.2d 453 (2009) (per curiam).

Defendants first assert that plaintiff's claim is barred by the statute of limitations. North Carolina General Statutes, section 1-52(9) creates a three-year statute of limitations during which time a fraud claim may be brought. This three-year clock begins running when plaintiff discovers—or should have discovered in the course of reasonable diligence—the fraud. *Forbis v. Neal*, 361 N.C. 519, 524-25, 649 S.E.2d 382, 385-86 (2007). When a fraud should have been discovered in the exercise of reasonable diligence generally is a question for the jury, especially when the evidence is "inconclusive or conflicting." *Id.* (citations omitted).

After the trial, the jury entered a verdict in which they found, *inter alia*, that plaintiff neither knew nor should have known prior to 12 December 2003 of activities taken by Wagoner or WKS with respect to the Property "after late June 2000." At trial, defendants claimed that plaintiff should have had knowledge of the events in question in July 2000. However, plaintiff testified that he did not know about the development until 2006. Plaintiff corroborated his testimony with the timing of his filing, which occurred immediately after the time he testified he discovered defendants' actions. Plaintiff's testimony, consistent with his explanation of his actions, is more than a "[m]ere scintilla of evidence," enabling a jury to make a decision based upon more than just "suspicion, conjecture, guess, surmise or speculation." *Shuford v. Scruggs*, 201 N.C. 685, 687, 161 S.E. 315, 316 (1931).

There also was more than a scintilla of evidence presented that plaintiff would not have learned of the alleged fraud through reasonable diligence. Plaintiff testified that he, in the course of his job as a real estate broker, regularly searched the Multiple Listing Service ("MLS") database of real estate listings. Specifically, plaintiff typically searched for larger tracts of land listed for sale. Plaintiff testified that if the Property had been listed for sale, he would have expected to have seen it. Plaintiff, a real estate broker, believed that he could reasonably anticipate that his efforts would bring to his attention any important facts about the Property. Although a listing for the Property was placed on the MLS on 7 October 2003, plaintiff testified that he did not see any listing for the Property.

Accordingly, in view of plaintiff's testimony, we hold that more than a scintilla of evidence existed and, therefore, the trial court properly allowed the jury to determine whether plaintiff exercised reasonable diligence to discover defendants' fraud. *See Forbis*, 361 N.C. at 524-25, 649 S.E.2d at 385-86. Plaintiff's credibility is a matter for the jury, and its determination will not be disturbed here. *Crocker v. Roethling*, 363 N.C. 140, 147, 675 S.E.2d 625, 631 (2009) ("[M]atters of credibility are for the jury, not for the trial court.") (citing *Coach Co. v. Lee*, 218 N.C. 320, 323, 11 S.E.2d 341, 343 (1940)). Therefore, we hold that the trial court appropriately left the credibility determination to the jury and that the jury properly found that plaintiff did not know nor "should he reasonably have known before December 12, 2003 of the activity of Defendant, G W Wagoner, Jr. or Defendant, WKS Corporation after late June 2000 relating to the Foster property."

**[2]** Defendants next argue that plaintiff failed to plead and prove fraud properly. We disagree.

Fraud requires a " '(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.' " *Forbis*, 361 N.C. at 526-27, 649 S.E.2d at 387 (quoting *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974)). The North Carolina Rules of Civil Procedure, Rule 9(b), requires that "[i]n all averments of fraud, duress or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." N.C. Gen. Stat. § 1A-1, Rule 9(b) (2007). This requirement ensures a defendant will be informed sufficiently of the allegations brought against him, because a fraud claim may cover a broad range of actions and statements. *See Terry v. Terry*, 302 N.C. 77, 85, 273

S.E.2d 674, 678 (1981). "[I]n pleading actual fraud[5][,] the particularity requirement is met by alleging time, place and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent acts or representations." *Id. See also Coley v. Bank*, 41 N.C. App. 121, 125, 254 S.E.2d 217, 219 (1979) ("The pleader . . . must state with particularity the time, place and content of the false misrepresentation . . . [and] must identify the particular individuals who dealt with him when he alleges that he was defrauded by a group or association of persons.") (citations omitted). " 'While the facts constituting the fraud must be alleged with particularity, there is no requirement that any precise formula be followed or that any certain language be used.' " *Hunter v. Guardian Life Ins. Co. of Am.*, 162 N.C. App. 477, 481, 593 S.E.2d 595, 598 (2004) (quoting *Carver v. Roberts*, 78 N.C. App. 511, 513, 337 S.E.2d 126, 128 (1985)). " 'It is sufficient if, upon a liberal construction of the whole pleading, the charge of fraud might be supported by proof of the alleged constitutive facts.' " *Carver v. Roberts*, 78 N.C. App. 511, 513, 337 S.E.2d 126, 128 (1985) (quoting *Manufacturing Co. v. Taylor*, 230 N.C. 680, 686, 55 S.E.2d 311, 315 (1949)). A requirement of specificity is not a requirement of perfect and complete specificity. *See Hunter*, 162 N.C. App. at 481, 593 S.E.2d at 598; *see also Carver*, 78 N.C. App. at 513, 337 S.E.2d at 128.

Initially, defendants contend that plaintiff's complaint is not sufficiently particular and that the proof of defendants' fraud offered at trial was inconsistent with plaintiff's allegation. With respect to their challenge of plaintiff's pleadings, defendants argue that plaintiff's amended complaint's paragraphs numbered 26 and 33—read together but otherwise in isolation—are not sufficiently particular to plead fraud properly. We disagree.

In relevant part, plaintiff's amended complaint provides:

25. R.T. Hudgins told Mr. Wagoner on or about June 28, 2000 that he wanted the partnership through W.K.S. to exercise its option to purchase the property.

26. Wagoner and W.K.S. falsely led Hudgins to believe as a result of that conversation that W.K.S. would allow the option to expire

---

5. We note that *Terry* distinguishes between actual and constructive fraud. *See Terry*, 302 N.C. at 82-85, 273 S.E.2d at 677-79. Notwithstanding, the parties in the case *sub judice* fail to distinguish between the two and limit their argument to actual fraud. Accordingly, we only address plaintiff's pleadings in view of the requirements for sufficiently pleading actual fraud. *See* N.C. R. App. P. 28(b)(6) (2007).

and that Wagoner and W.K.S. would not take further action with regard to the partnership or the partnership Property.

27. Despite these fraudulent representations, Defendant Wagoner began a fraudulent scheme to purchase and hide the purchase of the Property from Mr. Hudgins.

28. Without informing Mr. Hudgins, W.K.S. subsequently extended the option to purchase the property and ultimately simply assigned the rights to the option to Defendant C D & J of Burlington, LLC.

29. C D & J of Burlington, LLC purchased the Property partly using Hudgins' investment.

30. The Property was ultimately transferred to another of Wagoner's corporations, Waterfalls, LLC on February 23, 2006.

. . . .

33. As outlined herein, Defendant Wagoner and W.K.S. made representations to Mr. Hudgins that their activities were complete with regard to the partnership property.

34. Defendants Wagoner and W.K.S. engaged in a fraudulent scheme through the use of newly formed LLCs to purchase and hide the purchase of the property from Mr. Hudgins.

35. Such acts damaged Mr. Hudgins who is now entitled to compensatory damages and punitive damages in excess of $10,000.

Although plaintiff's allegations did not go so far as to include either verbatim dialogue of his conversation with Wagoner or an intricate and transparent explanation of the corporate transactions by which Wagoner purchased the Property[6], plaintiff did allege that the fraudulent misrepresentation occurred during a conversation between him and Wagoner on or about 28 June 2000. Furthermore, the nature of the misrepresentation made during that conversation was "that W.K.S. would allow the option to expire and that Wagoner

---

6. "The presence of fraud, when resorted to by an adroit and crafty person, is at times exceedingly difficult to detect. Indeed, the more skillful and cunning the accused, the less plainly defined are the badges which usually denote it. Under such conditions, the inferences legitimately deducible from all the surrounding circumstances furnish, in the absence of direct evidence, and often in the teeth of positive testimony to the contrary, ample ground for concluding that fraud has been resorted to and practiced by one or more of the parties." *Terry*, 302 N.C. at 82, 273 S.E.2d at 677 (citations omitted).

and W.K.S. would not take further action with regard to the partnership or the partnership Property." As a result of Wagoner's misrepresentation and subsequent actions taken by Wagoner and WKS "without informing [plaintiff,]" defendants purchased and hid the purchase of the Property from plaintiff. Plaintiff alleged that these actions entitled him to compensatory and punitive damages in excess of $10,000.00. Accordingly, we hold that plaintiff sufficiently pleaded a cause of action for fraud. *See Terry*, 302 N.C. at 85, 273 S.E.2d at 678 ("[I]n pleading actual fraud the particularity requirement is met by alleging time, place and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent acts or representations").[7]

[3] Defendants also contend that plaintiff's evidence at trial did not comport with his pleadings. Specifically, defendants address plaintiff's testimony that Wagoner had told him, "[I]f we were going to extend the option or do anything else on the property, [Wagoner] would let [plaintiff] know."

At trial, in relevant part, the following exchange occurred:

Q As June 2000 began to end, did you have any conversations with Mr. Wagoner about renewing the option?

A I did.

Q What happened there?

A I went down to his office and we discussed whether or not we would extend the option again and I told him that we would do whatever he wanted to do. And he ultimately told me that if we were going to extend the option or do anything else on the property he'd let me know.

Q What did he say about it?

A He said if he was going to extend the option or do anything else on the property he'd let me know.

---

7. Although the complaint does not allege an exact "place" as set forth in *Terry*, defendants limit their challenge of the sufficiency of plaintiff's pleadings to an isolated reading of paragraphs numbered 26 and 33, *supra*. Notwithstanding, when testing the legal sufficiency of the pleadings pursuant to a *de novo* review, on these facts, we do not perceive the limited absence of a the disclosure of a precise geographic location of a "face to face" conversation or a caveat that the conversation was conducted via telephone to be material, especially in view of defendants' answer to plaintiff's amended complaint that admitted that the conversation occurred on 28 June 2000 but denied any fraud or misrepresentation.

Q  Did he let you know?

A  No.

. . . .

Q  Did he tell you at the time that the partnership agreement was over?

A  No.

Notwithstanding defendants' assertion that the foregoing testimony is inconsistent with plaintiff's allegations, we believe the testimony illustrates the basis for plaintiff's allegations that on 28 June 2000, Wagoner and plaintiff discussed whether WKS would exercise the option to purchase the Property, Wagoner's assertion that he would let plaintiff know if any action was to be taken with respect to the Property, and Wagoner's subsequent silence led plaintiff to believe that no action had been or was to be taken with respect to the Property.

Furthermore, defendants argue that the statement in question was too vague and indefinite to be a "[f]alse representation or concealment of a material fact." *See Forbis*, 361 N.C. at 526-27, 649 S.E.2d at 387 (citation and internal quotation marks omitted). During the 28 June 2000 discussion between plaintiff and Wagoner, Wagoner told plaintiff that "if we were going to extend the option or do anything else on the property [Wagoner] would let [plaintiff] know." Defendants claim that the phrase, "let him know," is vague. As used in the context of plaintiff's discussion with Wagoner, the phrase "let him know" is a sufficient indication of Wagoner's intent to inform plaintiff of "anything else [to be done] on the property."

Defendants also contend that the phrase, "anything else," is vague. However, we believe that doing "anything else on the property" is a broad, but inclusive statement reasonably encompassing any activity or action involving the Property. Even if this were vague, the previous words, "extend the option" are very clear and refer to the exact action in question here. We hold that the statement is not too vague to support a claim of fraud.

[4] Defendants next challenge plaintiff's offer of proof with respect to Wagoner's intent. "As a general rule, a mere promissory representation will not be sufficient to support an action for fraud. A promissory misrepresentation may constitute actionable fraud when it is made with intent to deceive the promisee, and the promisor, at the

time of making it, has no intent to comply." *Johnson v. Ins. Co.*, 300 N.C. 247, 255, 266 S.E.2d 610, 616 (1980) (citations omitted), *abrogated on other grounds, Meyers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 569, 374 S.E.2d 385, 391-92 (1988). Juries often have little access to direct evidence of a person's intent and therefore may infer intent from the totality of the properly admitted evidence. *See Jones*, 194 N.C. App. at 215, 670 S.E.2d at 250.

Here, there was more than a scintilla of evidence from which the jury reasonably could have concluded that Wagoner intended to deceive plaintiff and had no intention of complying with his statement that "if we were going to extend the option or do anything else on the property [Wagoner] would let [plaintiff] know." The evidence, viewed in the light most favorable to plaintiff, shows that Wagoner made this statement, then tried to buy out plaintiff, and then took actions concerning the Property without first informing plaintiff. Given the brief time lapse between these events—less than a full month—a jury reasonably could infer from the evidence presented that Wagoner did not intend to keep plaintiff informed and involved in the Property, and that Wagoner wanted to deceive plaintiff so as to not have to share profits with him.

[5] Defendants further claim that plaintiff did not reasonably rely upon the statement. Defendants correctly state that " '[r]eliance is not reasonable if a plaintiff fails to make any independent investigation[.]' " *MacFadden v. Louf*, 182 N.C. App. 745, 747, 643 S.E.2d 432, 434 (2007) (quoting *RD&J Props. v. Lauralea-Dilton Enters., LLC*, 165 N.C. App. 737, 744, 600 S.E.2d 492, 498 (2004)). However, "[t]he reasonableness of a party's reliance is a question for the jury, unless the facts are so clear that they support only one conclusion." *State Properties, LLC v. Ray*, 155 N.C. App. 65, 73, 574 S.E.2d 180, 186 (2002). As we previously have stated, at trial, evidence was presented of plaintiff's searches of the MLS reports, which failed to inform him of defendants' actions. The reasonableness of these actions as independent investigation is for the jury, and the facts are not "so clear that they support only one conclusion." *Id.* Furthermore, as it relates to fraud in purchases of property, reliance is not unreasonable if the plaintiff can show that "it was induced to forego additional investigation by the defendant's misrepresentations." *RD&J Props. v. Lauralea-Dilton Enters., LLC*, 165 N.C. App. 737, 746, 600 S.E.2d 492, 499 (2004) (citations and internal quotation marks omitted). A jury also could have found that Wagoner's assertion that he would inform plaintiff if he did "anything else on the property" was sufficient to

induce plaintiff to forego further investigations, thereby satisfying the reasonable reliance requirement.

For the foregoing reasons, we hold that (1) plaintiff's pleadings were sufficiently particular to plead a cause of action for fraud properly; (2) plaintiff's proof at trial comported with his pleadings; (3) the necessary elements of fraud were supported by sufficient evidence to reach the jury; and (4) the trial court did not err in denying defendants' motion for JNOV with respect to plaintiff's pleadings or proof of fraud.

[6] In their third argument on appeal, defendants argue that there was not sufficient evidence presented at trial for the jury to determine damages. We disagree.

Our Supreme Court has stated that,

[i]n proving damages, absolute certainty is not required but evidence of damages must be sufficiently specific and complete to permit the jury to arrive at a *reasonable conclusion*. Damages may be recovered if a plaintiff proves the extent of the harm and the amount of money representing adequate compensation with *as much certainty as the nature of the tort and the circumstances permit*.

*Fortune v. First Union Nat. Bank*, 323 N.C. 146, 150, 371 S.E.2d 483, 485 (1988) (internal citations and quotation marks omitted) (emphasis added). We hold that, in this case, plaintiff's damages were proven with sufficient certainty to support the jury's award. The jury heard evidence as to damages from both parties, including evidence as to (1) how much money defendants have made to date, (2) how much they have contracted to be paid in the future, (3) how much they estimate their profit to be, and (4) how much money the project on the whole has lost. *See Southern Watch Supply Co. v. Regal Chrysler-Plymouth*, 82 N.C. App. 21, 30, 345 S.E.2d 453, 459 (1986) (explaining that prices agreed to be paid for an object is a fair valuation of the object). Expert testimony and mathematical formulas are not required to meet the burden of proof concerning damages. *See United Leasing Corp. v. Guthrie*, 192 N.C. App. 623, 630-31, 666 S.E.2d 504, 507-10 (2008) (holding lay witness testimony consisting of estimations by a project manager with limited knowledge of the value or the nature of the product was sufficient evidence, along with a showing of the witness's basis of knowledge, to allow the amount of damages to be determined by the jury).

**HUDGINS v. WAGONER**

[204 N.C. App. 480 (2010)]

Furthermore, the amount of damages was neither excessive nor contrary to law. "In a fraud case, damage is the amount of loss caused by the difference between what was received and what was promised through a false representation." *First Atl. Mgmt. Corp. v. Dunlea Realty Co.*, 131 N.C. App. 242, 256, 507 S.E.2d 56, 65 (1998). Plaintiff here showed that Wagoner has made a profit from the Property, from the land he has sold and been paid for, from the land he has sold and which is currently under contract, and from the land he still owns. Evidence exists suggesting that plaintiff had been led to believe he would receive half of the profits from the Property. The highest estimate of Wagoner's profit exceeds $500,000.00. Giving every reasonable interpretation and inference to plaintiff, $250,000.00—half of the profit realized by defendants—is not an unreasonable recovery for defendants' fraud. *See id.*

[7] In their fourth argument on appeal, defendants contend that the jury had an insufficient basis upon which to award punitive damages. Pursuant to our Supreme Court's recent holding in *Scarborough v. Dillard's, Inc.*, 363 N.C. 715, 721-22, 693 S.E.2d 640, 644, (2009), we are constrained to reverse the trial court's denial of defendants' motion for JNOV on this limited issue, and we must remand the matter to the trial court for entry of a written opinion with respect to punitive damages as set forth in *Scarborough. See id.* at 721-23, 693 S.E.2d at 644 (holding that the standard of review upon a motion for JNOV with respect to punitive damages is clear and convincing evidence produced by the nonmovant of an aggravating factor set forth in section 1D-15 of our General Statutes which also is related to the injury for which the jury awarded compensatory damages and explaining that the trial court must enter a written opinion setting forth, with specificity, "its reasons for upholding or disturbing the finding or award.") (citing N.C. Gen. Stat. § 1D-50 (2007)).

North Carolina General Statutes, section 1D-15 states that punitive damages are permitted only when compensatory damages are allowed and some aggravating factor, such as fraud, is proven by clear and convincing evidence. N.C. Gen. Stat. § 1D-15 (2007). For the tort of fraud, the aggravating factor may be intrinsic to the tort.[8]

---

8. While no aggravating factor is necessary beyond the fraud alleged in the complaint, it still is required for punitive damages that the fraud be proven by clear and convincing evidence. *See Scarborough*, 363 N.C. at 721, 693 S.E.2d at 644 ("[T]he General Assembly intended that the quantum of evidence be more than would be sufficient to uphold liability for the underlying tort . . . ."). Therefore, it is possible for a jury to find someone liable for fraud by preponderance of the evidence, but not find an aggravating factor of fraud by clear and convincing evidence. *See id.*

*Newton v. Ins. Co.*, 291 N.C. 105, 112, 229 S.E.2d 297, 301 (1976). For the reasons previously stated, the jury had sufficient evidence to find the necessary aspects of a charge of fraud, and to find evidence of plaintiff's damages, defendants' profits, and defendants' efforts to keep its actions from plaintiff's attention.

Furthermore, the jury was instructed correctly that, for punitive damages, they must find fraud by "clear and convincing" evidence. N.C. Gen. Stat. § 1D-15(b) (2007). *See also Scarborough*, 363 N.C. at 720, 693 S.E.2d at 643 ("[A] claimant 'must prove the existence of an aggravating factor by clear and convincing evidence.' ") (citing N.C. Gen. Stat. § 1D-15(b) (2007)).

Notwithstanding, our Supreme Court expressly held

that in reviewing a trial court's ruling on a motion for judgment notwithstanding the verdict on punitive damages, our appellate courts must determine whether the nonmovant produced clear and convincing evidence from which a jury could reasonably find one or more of the statutory aggravating factors required by N.C.G.S. § 1D-15(a) and that that aggravating factor was related to the injury for which compensatory damages were awarded.

*Scarborough*, 363 N.C. at 721-22, 693 S.E.2d at 644. The Court explained that

[r]eviewing the trial court's ruling under the "more than a scintilla of evidence" standard does not give proper deference to the statutory mandate that the aggravating factor be proved by clear and convincing evidence. Evidence that is only more than a scintilla cannot as a matter of law satisfy the nonmoving party's threshold statutory burden of clear and convincing evidence.

*Id.* at 722, 693 S.E.2d at 644.

Furthermore, the Court instructed as follows:

[T]his Court, in reviewing trial court rulings on motions for directed verdict and judgment notwithstanding the verdict, has held that the trial court should not make findings of fact, and if the trial court finds facts, they are not binding on the appellate court. *Kelly v. Int'l Harvester Co.*, 278 N.C. 153, [1]58-59, 179 S.E.2d 396, 398-99 (1971). Moreover, the language of the statute does not require findings of fact, but rather that the trial court *"shall state in a written opinion its reasons for upholding or disturbing the finding or award.* In doing so, the court shall

address with specificity the evidence, or lack thereof, as it bears on the liability for or the amount of punitive damages." N.C.G.S. § 1D-50. That the trial court utilizes findings to address with specificity the evidence bearing on liability for punitive damages is not improper; the "findings," however, merely provide a convenient format with which all trial judges are familiar to set out the evidence forming the basis of the judge's opinion. The trial judge does not determine the truth or falsity of the evidence or weigh the evidence, but simply recites the evidence, or lack thereof, forming the basis of the judge's opinion. As such, these findings are not binding on the appellate court even if unchallenged by the appellant. These findings do, however, provide valuable assistance to the appellate court in determining whether as a matter of law the evidence, when considered in the light most favorable to the nonmoving party, is sufficient to be considered by the jury as clear and convincing on the issue of punitive damages.

*Id.* at 722-23, 693 S.E.2d at 644-45 (emphasis added).

The case *sub judice* does not contain a written opinion stating the trial court's reasons for upholding the final award. Pursuant to the Supreme Court's express holding and clear instruction based upon a statutory mandate, we are constrained to reverse the trial court's denial of defendants' motion for JNOV with respect to punitive damages, and we remand the matter for the limited purpose of entering a written opinion as to those damages in view of *Scarborough. See id.*

For the foregoing reasons, we hold that defendants' motion for JNOV properly was denied except as to punitive damages, which must be reconsidered as explained, *supra.*

## II.

Next, defendants argue that the trial court erred in not granting their motion for a new trial pursuant to North Carolina General Statutes, section 1A-1, Rule 59(a) because (1) plaintiff untimely identified the alleged misrepresentation, (2) plaintiff presented improper evidence to the jury, and (3) plaintiff's attorney made improper closing arguments. We disagree.

"A trial court's ruling on a motion for a new trial under Rule 59 is usually subject to an abuse of discretion standard." *Davis v. Davis,* 360 N.C. 518, 523, 631 S.E.2d 114, 118 (2006) (citing *Worthington v. Bynum,* 305 N.C. 478, 482, 290 S.E.2d 599, 602 (1982)). " 'It has been long settled in our jurisdiction that an appellate court's review of a

trial judge's discretionary ruling either granting or denying a motion to set aside a verdict and order a new trial is strictly limited to the determination of whether the record affirmatively demonstrates a manifest abuse of discretion by the judge.' " *Id.* (quoting *Worthington v. Bynum,* 305 N.C. 478, 482, 290 S.E.2d 599, 602 (1982)). " 'A ruling committed to a trial court's discretion is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision.' " *Crocker v. Roethling,* 363 N.C. 140, 156, 675 S.E.2d 625, 636 (2009) (quoting *White v. White,* 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985)).

[8] Defendants first argue that the trial court erred by denying their motion for a new trial because plaintiff untimely identified the alleged misrepresentation that purportedly had not been pleaded with sufficient particularity, which (1) "made it practically impossible for [defendants] to adequately call, examine, and cross-examine witnesses regarding the fraud claim[,]" and (2) "constituted surprise which ordinary prudence could not have guarded against." Therefore, defendants argue, the trial court should have granted a new trial pursuant to North Carolina Rules of Civil Procedure, Rule 59(a)(1) and (3). *See* N.C. Gen. Stat. § 1A-1, Rule 59(a)(1), (3) (2007). We disagree.

We already have held that, on these facts, plaintiff's pleadings were sufficiently particular. Therefore, any argument with respect to the sufficiency of the pleadings has been addressed and is without merit. Furthermore, although defendants argue that "[t]he trial court did not identify the misrepresentation at issue until after the close of plaintiff's evidence[,]" defendants fail to support this assertion with any reference to the multi-volume transcript of the proceedings at trial or to the record in contravention of North Carolina Rules of Appellate Procedure, Rule 28(b)(6). *See* N.C. R. App. P. 28(b)(6) (2007) ("Evidence or other proceedings material to the question presented may be narrated or quoted in the body of the argument, with appropriate reference to the record on appeal or the transcript of the proceedings, or the exhibits."). Defendants also failed to offer any binding authority or analysis in support of their bare assertion that the purportedly late identification of the misrepresentation made it "practically impossible" to "call, examine, and cross-examine witnesses regarding the fraud claim" and that this constituted an irregularity pursuant to which the trial court should have granted a new trial. *See* N.C. Gen. Stat. § 1A-1, Rule 59(a)(1) (2007).

In support of their argument, defendants cite, *Burton v. Weyerhaeuser Timber Co.*, 1 F.R.D. 571 (D. Or. 1941), without further explanation. *See also* 2 G. Gray Wilson, *North Carolina Civil Procedure*, § 59-5, at 59-12-13 (3d ed. 2007). Wilson cites *Burton* for the proposition that

> a new trial was awarded where a factual defense was not disclosed during a pretrial hearing and plaintiff was not in a position to rebut the evidence offered against him at trial.

2 G. Gray Wilson, *North Carolina Civil Procedure*, § 59-5, at 59-12-13 n.82. In *Burton*, the plaintiff complained that he received a disabling burn from muriatic acid from an acid carboy returned by the defendant. *Burton*, 1 F.R.D. at 573. Notwithstanding the parties' pretrial hearing, during which they were "expected to disclose all legal and fact issues which they intend[ed] to raise at trial," during the trial, the defendant improperly made a demonstration that muriatic acid could not have caused plaintiff's burn; rather the burn was a sulphuric burn. *Id.* at 572-73.

Neither *Burton* nor Wilson's treatise are binding authority on this Court, and we do not believe that the improper irregularity at issue in *Burton* is a fair comparison to the alleged untimely identification of the misrepresentation in the case *sub judice*. Without more, we must overrule defendants' argument.

With respect to defendants' claim that "ordinary prudence could not have guarded against" the alleged surprise resulting from the late identification of the misrepresentation at issue, defendants fail to disclose or reference any discovery conducted to avoid or mitigate their purported surprise.[9] Furthermore, as with the preceding argument, defendants offer no authority or substantive argument in support of their bare assertion of surprise. Accordingly, defendants' assertion is overruled.

[9] In defendants' second argument for a new trial, defendants contend that the trial court erred by allowing the jury to hear testimony concerning an unrelated felony to which Wagoner had pleaded guilty. We disagree.

The only information the jury heard on this topic is that Wagoner "gave up [his] broker's license" because "[t]he real estate commission

---

9. We acknowledge that the record does contain excerpts from a deposition taken of plaintiff as well as various documentary exhibits; however, defendants make no attempt to show that they made any effort during discovery, which could constitute "ordinary prudence," to avoid surprise.

asked [Wagoner] to either give [the license] up or they would take [it] away" as per "their rules." All information concerning the felony was discussed during *voir dire* and outside the presence of the jury. Plaintiff's counsel, upon learning of the situation in *voir dire*, withdrew his question concerning why Wagoner had to give up his license, conceding that it was a sustainable objection. The trial court, in *voir dire*, said it would sustain the objection. While the trial court did not tell the jury that an objection had been sustained, no objection was made in the presence of the jury. Furthermore, no motion to strike or to instruct the jury to disregard the statements about Wagoner's license was made. "[The trial] court does not err by failing to give a curative instruction if one is not requested" unless the error or impropriety is "extreme." *Smith v. Hamrick*, 159 N.C. App. 696, 699, 583 S.E.2d 676, 679 (2003).

In this case, questions concerning Wagoner's forfeiture of his license were asked in good faith and any purported impropriety was not extreme. Therefore, we hold that the trial court did not abuse its discretion in denying this motion for a new trial due to the lack of a curative instruction.

**[10]** In defendants' final argument on appeal, defendants claim that plaintiff's closing argument was improper and that the trial court's failure to give a curative instruction *ex mero motu* required the granting of a new trial. We disagree.

Defendants cite *Crutcher v. Noel*, 284 N.C. 568, 572, 201 S.E.2d 855, 857 (1974), which states, "[w]hen counsel makes an improper argument, it is the duty of the trial judge, upon objection or *ex mero motu*, to correct the transgression by clear instructions." However, it is not the duty of the trial court to completely take over the role and responsibilities of opposing counsel. It is not every minor mistake that *requires* a court to intercede; it is the general rule that a party must make an objection or request curative instructions. *See, e.g., Hamrick*, 159 N.C. App. at 699, 583 S.E.2d at 679. It is only when the error and the unfair prejudice are extreme that a court *must* intervene. *See id.*

In *Crutcher*, the attorney, in his closing statement, made claims about exactly what testimony would have been offered by specific witnesses, who had not been called, had they been called. *Crutcher*, 284 N.C. at 573, 201 S.E.2d at 858. The trial court overruled objections to these statements. *Id.* at 571-73, 201 S.E.2d at 857-58. This was reversible error because of the manifest unfairness of an attorney

stating facts and testimony not included in the record, thereby deny-
ing his opponent "the guaranteed rights of confrontation and cross-
examination." *Id.* at 573, 201 S.E.2d at 858.

In this case, the statement complained of on appeal concerned
plaintiff's attorney's impeachment of Wagoner. From the trial court's
act of sustaining defendants' objection, it appears that plaintiff's
attorney went too far in questioning the reliability of a witness. A
lawyer may argue that the jury should believe one witness over
another but may not call a witness a liar. *See, e.g., Couch v. Private
Diagnostic Clinic,* 133 N.C. App. 93, 98, 515 S.E.2d 30, 35 (1999) ("It
is improper for a lawyer to assert his opinion that a witness is lying.
However, the mere fact that counsel makes such an argument does
not automatically establish that the argument is grossly improper.").
There is a fine line between the two, and, in this case, the lawyer's
misstep was not so grievous as to say that Wagoner is a liar or was
lying. Instead, he made statements which "*could be construed* as
reflecting his personal belief that [Wagoner] was dishonest or
untrustworthy in his testimony."[10] (emphasis added). Further-
more, the narration of the closing argument discloses that "[t]his
argument was made in the context of Mr. Brown's argument to the
jury that the testimony of the parties dramatically conflicted, and that
the jurors would have to decide what was the truth as to this case."
Such testimony, which was ambiguous and could be construed multi-
ple ways, was not extreme in its prejudicial nature.[11] Therefore,
the trial court was not required to intervene *ex mero motu* or to
grant a new trial. *Hamrick,* 159 N.C. App. at 699, 583 S.E.2d at 679. We
hold that the trial court did not abuse its discretion in refusing to

---

10. The closing arguments were not transcribed. A narration of the arguments
was settled pursuant to an order from the trial court and is included in the record
on appeal.

11. Compare this language with the language from *Couch,* which we determined
was not prejudicial: (1) "There is nothing worse than a liar because you can't protect
yourself from a liar. . . . [T]hese people, and all the doctors that they paraded in here
who told you lie, after lie, after lie"; (2) "They lied to your face, blatantly. They didn't
care. They tried to make fools of everybody in the courtroom"; (3) "In your face lies";
(4) " . . . they knew before they put their hands on the Bible that they were going to tell
those lies and [Defendants' attorney] put them up anyway. That's heavy. That's a heavy
accusation"; (5) "Well, I don't know what you call it but that's a lie. That's not even—
that's not shading the truth . . . How is that not a lie? How is that not a lie?"; (6) "So you
see, when I say a lie, okay, I want the record to reflect that I mean a lie"; (7) "Now let
me ask you this, how do you think that they intend to get out from under all these
lies?"; (8) "This is another blatant lie"; (9) "When they parade these witnesses in one
after another and lied to your face. I mean, they were not even smooth about it." *Couch,*
133 N.C. App. at 97, 515 S.E.2d at 34-35.

**IN RE A.R.D.**

[204 N.C. App. 500 (2010)]

grant the defendants a new trial due to plaintiff's attorney's impeachment of Wagoner.

### Conclusion:

For the foregoing reasons, we (1) affirm, in part, the trial court's order denying defendants' motion for JNOV; (2) reverse, in part, and remand the matter to the trial court for entry of a written opinion with respect to the award of punitive damages as required by North Carolina General Statutes, section 1D-50 and explained by *Scarborough*, 363 N.C. at 722-23, 693 S.E.2d at 644-45; and (3) affirm the trial court's order denying defendants' motion for a new trial.

Affirmed in part; Reversed in part; Remanded.

Judges McGEE and HUNTER, Jr., Robert N. concur.