DAVIS, Judge.
 

 *439
 
 This appeal arises from a jury award of compensatory and punitive damages in favor of Christopher Hayes ("Plaintiff") on his alienation of affections claim against Scott Waltz ("Defendant"). On appeal, Defendant's primary argument is that the trial court erred by denying his motion for judgment notwithstanding the verdict ("JNOV") with regard to the compensatory damages award. Plaintiff cross-appeals from the trial court's order granting Defendant's JNOV motion as to the jury's award of punitive damages. After careful review, we affirm in part and reverse and remand in part.
 

 Factual Background
 

 Plaintiff and Rebecca Lynn Hayes ("Ms. Hayes") were married on 30 December 2000. They had two children together during their marriage, and Plaintiff legally adopted Ms. Hayes' son from a prior relationship. In 2006, Plaintiff and Ms. Hayes moved their family from Florida to North Carolina.
 

 In March 2009, Ms. Hayes began working for Bayer as a legal administrative assistant. In early 2011, Ms. Hayes was offered a position in Bayer's environmental sciences group. She accepted the position and began working with that group in February of 2011.
 

 Approximately one week later, she attended a work-sponsored conference in Cancun, Mexico. At the conference, Ms. Hayes met Defendant, who also worked for Bayer and lived in Indiana. Defendant introduced himself and other members of his group to Ms. Hayes on the first evening of the conference, and they all went to a dance club together later that
 
 *440
 
 night. Defendant danced with Ms. Hayes at the club and later walked her to her room. They talked for a while, and Defendant left.
 

 On the second night of the conference, Defendant and Ms. Hayes again attended the dance club, and he walked her back to her room afterwards. They proceeded to engage in sexual intercourse. On the third night of the conference, Defendant and Ms. Hayes had sexual intercourse a second time. When the conference ended, Defendant returned to Indiana, and Ms. Hayes returned to North Carolina.
 

 Between March 2011 and June 2011, Defendant and Ms. Hayes communicated frequently via email, telephone, and text messaging. They exchanged 423 text messages and phone calls during the month of March, 977 in April, 1,093 in May, and 894 in June. They spent a total of 26.07 hours on the telephone together during this time period.
 

 On 27 June 2011, Plaintiff examined his family's phone bill and noticed that there were a large number of communications between his wife's cell phone number and a telephone number with a 412 area code that he did not recognize. Plaintiff dialed the number-which he later discovered belonged to Defendant-but Defendant did not answer. Instead, Defendant sent Ms. Hayes a text message to inform her that her husband had tried to contact him. Ms. Hayes then sent Plaintiff a text message stating, "You can stop calling that number. He's not going to answer." Plaintiff responded by asking her if "we need to talk?" Ms. Hayes asked him to read a letter she had written to him and placed in a drawer in her closet. The letter discussed several of her prior extramarital affairs. It further stated that she had "met someone" and did not want to hide that from Plaintiff.
 

 Plaintiff drove to Ms. Hayes' workplace, followed her car when she left work, and pulled up next to her when she turned into a parking lot. Plaintiff and Ms. Hayes then talked for a few minutes about the letter at which point Plaintiff used her cell phone to call the last number that had been dialed from the phone, which was Defendant's number. Defendant answered his phone, and in response to questioning by Plaintiff, Defendant admitted that he and Ms. Hayes had engaged in sexual intercourse in Cancun. Plaintiff asked if Defendant knew that Ms.
 
 *612
 
 Hayes was married, and Defendant admitted that he was aware of that fact. Plaintiff then told Defendant to "[l]eave her alone. We're going to try and work this out."
 

 Plaintiff suggested to Ms. Hayes that they both "cool off" for a while and then try marital counseling. Plaintiff testified that although their relationship felt "strain[ed]" after he learned of Ms. Hayes' affair in Cancun,
 
 *441
 
 they still spent time together, went jogging together, and "enjoyed being around each other" over the next several days.
 

 During that time period, Ms. Hayes spent a few nights at the residences of friends but also spent some nights in the marital home. Plaintiff and Ms. Hayes had been planning to pick up their children from Plaintiffs parents' home in Florida over the July 4 weekend where the children had been visiting. However, because Ms. Hayes decided she did not want to travel to Florida with Plaintiff under the circumstances, Plaintiff went to Florida without her.
 

 While Plaintiff was in Florida, Defendant drove from Indiana to North Carolina to pick up his children from a prior marriage.
 
 [1]
 
 He intended to take them to his home in Indiana for a visit over the holiday weekend. After arriving in North Carolina, Defendant also picked up Ms. Hayes and took her with
 
 him
 
 and his children to Indiana. Defendant and Ms. Hayes spent the next six days and nights together. While traveling through North Carolina en route to Indiana, Defendant and Ms. Hayes stayed in a hotel and slept in the same bed together. They kissed and embraced while in North Carolina but did not have sexual intercourse again until they arrived in Indiana.
 

 Upon her return to North Carolina, Ms. Hayes informed Plaintiff and their children that she and Plaintiff were getting a divorce. Plaintiff and Ms. Hayes entered into a separation agreement on 2 August 2011.
 

 On 2 August 2013, Plaintiff filed a complaint against Defendant in Wake County superior Court asserting causes of action for alienation of affections and criminal conversation. In his complaint, Plaintiff sought both compensatory and punitive damages. Defendant filed an answer on 2 October 2013 and an amended answer on 4 August 2014.
 

 A jury trial was held beginning on 5 August 2014 before the Honorable Donald W. Stephens. The trial court bifurcated the compensatory damages and punitive damages phases of the trial.
 

 The jury returned a verdict (1) finding Defendant liable for alienation of affections; (2) finding in favor of Defendant on the criminal conversation claim; and (3) determining that Plaintiff was entitled to recover $82,500.00 in compensatory damages. Following the punitive damages phase, the jury returned a verdict awarding Plaintiff $47,000.00 in punitive damages.
 

 *442
 
 On 19 September 2014, Defendant filed a motion for JNOV pursuant to Rule 50(b) of the North Carolina Rules of Civil Procedure. Defendant also requested that he be granted relief from the judgment under Rule 60(b) or that he receive a new trial based on Rule 59 as a result of prejudicial statements made by Plaintiffs counsel during closing arguments. In the alternative, Defendant contended that he was entitled to a remittitur, arguing that Plaintiff "presented no evidence of economic damages proximately caused by any wrongful act of Defendant" and that the trial court should therefore "reduce the damages awarded to Plaintiff to an amount substantiated by the evidence presented at trial."
 

 On 22 October 2014, the trial court entered an order partially granting Defendant's JNOV motion by vacating the jury's award of punitive damages. However, the trial court denied Defendant's JNOV motion with regard to the compensatory damages award. The trial court also denied Defendant's remaining motions. Defendant filed a timely appeal, and Plaintiff, in turn, cross-appealed.
 

 Analysis
 

 I. Defendant's Appeal
 

 A. Denial of JNOV Motion as to Award of Compensatory Damages
 

 Defendant's primary argument on appeal is that the trial court erred by denying
 
 *613
 
 his motion for JNOV with regard to Plaintiff's alienation of affections claim.
 

 The standard of review of the denial of a motion for a directed verdict and of the denial of a motion for JNOV are identical. We must determine whether, upon examination of all the evidence in the light most favorable to the non-moving party, and that party being given the benefit of every reasonable inference drawn therefrom and resolving all conflicts of any evidence in favor of the nonmovant, the evidence is sufficient to be submitted to the jury.
 

 Springs v. City of Charlotte,
 

 209 N.C.App. 271
 
 , 274-75,
 
 704 S.E.2d 319
 
 , 322-23 (2011) (citation and quotation marks omitted).
 

 A motion for JNOV "should be denied if there is more than a scintilla of evidence supporting each element of the non-movant's claim."
 
 Shelton v. Steelcase, Inc.,
 

 197 N.C.App. 404
 
 , 410,
 
 677 S.E.2d 485
 
 , 491 (citation and quotation marks omitted),
 
 disc. review denied,
 

 363 N.C. 583
 
 ,
 
 682 S.E.2d 389
 
 (2009). "A scintilla of evidence is defined as very
 
 *443
 
 slight evidence."
 
 Pope v. Bridge Broom, Inc.,
 
 --- N.C.App. ----, ----,
 
 770 S.E.2d 702
 
 , 715 (citation and quotation marks omitted),
 
 disc. review denied,
 
 - -- N.C. ----,
 
 775 S.E.2d 861
 
 (2015).
 

 In order to successfully bring a claim for alienation of affections, the plaintiff must present evidence demonstrating "(1) a marriage with genuine love and affection; (2) the alienation and destruction of the marriage's love and affection; and (3) a showing that defendant's wrongful and malicious acts brought about the alienation of such love and affection."
 
 Heller v. Somdahl,
 

 206 N.C.App. 313
 
 , 315,
 
 696 S.E.2d 857
 
 , 860 (2010). On appeal, Defendant contends that his motion for JNOV should have been granted because (1) the evidence at trial failed to show that he engaged in wrongful and malicious conduct that caused the loss of affections between Plaintiff and Ms. Hayes; and (2) all of the sexual conduct between Ms. Hayes and him occurred outside North Carolina.
 

 A claim for alienation of affections is a transitory tort because it is based on transactions that can take place anywhere and that harm the marital relationship. The substantive law applicable to a transitory tort is the law of the state where the tortious injury occurred, and not the substantive law of the forum state. The issue of where the tortious injury occurs ... is based on where the alleged alienating conduct occurred, not the locus of the plaintiff's residence or marriage. Accordingly, where the defendant's involvement with the plaintiff's spouse spans multiple states, for North Carolina substantive law to apply, a plaintiff must show that the tortious injury occurred in North Carolina.
 

 Jones v. Skelley,
 

 195 N.C.App. 500
 
 , 506,
 
 673 S.E.2d 385
 
 , 389-90 (2009) (internal citations, quotation marks, brackets, and ellipses omitted).
 

 Establishing that the defendant's alienating conduct occurred within a state that still recognizes alienation of affections as a valid cause of action is essential to a successful claim since most jurisdictions have abolished the tort.
 
 Darnell v. Rupplin,
 

 91 N.C.App. 349
 
 , 353-54,
 
 371 S.E.2d 743
 
 , 746-47 (1988). However, as our Court explained in
 
 Jones,
 
 "even if it is difficult to discern where the tortious injury occurred, the issue is generally one for the jury[.]"
 
 Jones,
 

 195 N.C.App. at 507
 
 ,
 
 673 S.E.2d at 390
 
 .
 

 In the present case, Defendant asserts that because the evidence at trial demonstrated that the only instances of sexual intercourse between
 
 him
 
 and Ms. Hayes occurred neither in North Carolina nor in any other
 
 *444
 
 jurisdiction that recognizes the cause of action, there was no remaining evidence "that Defendant engaged in actionable unlawful conduct." We disagree.
 

 In the context of an alienation of affections claim, a wrongful and malicious act has been "loosely defined to include any intentional conduct that would probably affect the marital relationship."
 

 Id.
 

 at 508
 
 ,
 
 673 S.E.2d at 391
 
 (citation and quotation marks omitted). Our Court has further described this element as encompassing any "unjustifiable conduct causing the injury complained of."
 
 Heist v. Heist,
 

 46 N.C.App. 521
 
 , 523,
 
 265 S.E.2d 434
 
 , 436 (1980).
 

 Here, Plaintiff offered into evidence cell phone records showing the voluminous number
 
 *614
 
 of text messages and telephone calls between Defendant and Ms. Hayes from March 2011 (which was shortly after the conference in Cancun) to June 2011 (when Plaintiff learned that the two of them had engaged in sexual intercourse during the Cancun trip). Ms. Hayes testified that these communications-many of which occurred on weekends or very late at night-were all work related. Defendant stated at trial that they had "talked about a lot of different things" during their phone calls and text messages. He testified that "we talked about work. We talked about personal lives. We talked about her trip to London. We talked about raising our kids." Because the contents of these communications were not introduced at trial-only the fact that the communications had occurred (as shown on the call and text message logs contained within Plaintiff's cell phone bills)-Defendant asserts that Plaintiff has failed to demonstrate that "any of the conversations between Defendant and Ms. Hayes were salacious or otherwise inappropriate" so as to satisfy the element of wrongful and malicious conduct.
 

 As explained above, however, a motion for JNOV must be denied so long as there is more than a scintilla of evidence as to each essential element of the claim at issue. Here, Defendant and Ms. Hayes shared several thousand text messages and approximately 26 hours of telephone calls over the four-month period immediately following their sexual encounter in Cancun. Defendant's admission during his testimony that he decided not to answer the call from a North Carolina telephone number on 27 June 2011 because he "had an inclination that it was [Plaintiff]" and the fact that he then texted Ms. Hayes that Plaintiff was attempting to contact him allowed the jury to rationally infer that the communications between Ms. Hayes and himself were not, in fact, solely business related.
 

 *445
 
 When Plaintiff discovered that Defendant and Ms. Hayes had engaged in sexual intercourse, he told Defendant to leave her alone so that he and Ms. Hayes could work on their marriage. Only a few days after this request (which Plaintiff made on 27 June 2011), Defendant came to North Carolina, picked up Ms. Hayes, and took her on a trip to Indiana that lasted for six days. Evidence was presented that during this trip Defendant and Ms. Hayes kissed and embraced each other and slept in the same bed in a North Carolina hotel.
 

 The fact that this trip occurred less than a week after Plaintiff had directed Defendant to leave Ms. Hayes alone and that Plaintiff and Ms. Hayes permanently separated a few weeks later gave rise to a reasonable inference that there was wrongful and malicious conduct by Defendant that caused the loss of affection between Plaintiff and Ms. Hayes.
 
 See
 

 Jones,
 

 195 N.C.App. at 507
 
 ,
 
 673 S.E.2d at 390
 
 ("A claim for alienation of affections is comprised of wrongful acts which deprive a married person of the affections of his or her spouse-love, society, companionship and comfort of the other spouse." (citation and quotation marks omitted)).
 

 Defendant contends that his acts occurring after 27 June 2011 cannot be legally considered in determining whether Plaintiff offered sufficient evidence of an alienation of affections claim because that was the date on which Plaintiff and Ms. Hayes separated.
 
 See
 
 N.C. Gen.Stat. § 52-13(a) (2015) ("No act of the defendant shall give rise to a cause of action for alienation of affection ... that occurs after the plaintiff and the plaintiff's spouse physically separate with the intent of either the plaintiff or the plaintiffs spouse that the physical separation remain permanent.").
 

 As an initial matter, this argument ignores the fact that virtually all of the text messages and phone calls between Defendant and Ms. Hayes occurred prior to 27 June 2011. In addition, however, the evidence presented at trial as to the date of separation was conflicting. Their separation agreement states that the date of separation was 18 July 2011. Ms. Hayes testified that 18 July 2011 was the day she moved into her new apartment and that 11 July 2011 was the last night she spent at the marital residence. While there was other evidence suggesting that Ms. Hayes left the marital home with the intent to permanently separate from Plaintiff on 28 June 2011, conflicts in the evidence on a motion for JNOV are resolved in favor of the nonmoving
 
 *615
 
 party.
 
 See
 

 State Props., LLC v. Ray,
 

 155 N.C.App. 65
 
 , 72,
 
 574 S.E.2d 180
 
 , 186 (2002) (noting existence of some evidence supporting defendants' argument on appeal but disregarding that evidence in reviewing trial court's ruling on defendants'
 
 *446
 
 JNOV motion because "[a]ll conflicts in the evidence are to be resolved in the nonmovant's favor" (citation omitted)),
 
 disc. review denied,
 

 356 N.C. 694
 
 ,
 
 577 S.E.2d 889
 
 (2003). Therefore, because competent evidence was offered at trial supporting a finding that the parties' date of separation was
 
 after
 
 the trip Defendant and Ms. Hayes took to Indiana, the jury was able to properly consider evidence of acts that occurred after 27 June 2011.
 

 Defendant also argues that his conduct did not proximately cause the loss of affection between Plaintiff and Ms. Hayes because Ms. Hayes' prior extramarital affairs-rather than Defendant's conduct-destroyed their marriage. Defendant contends that these prior affairs showed Ms. Hayes' discontent and lack of satisfaction with her marriage, and that as a result, Plaintiff cannot show that "Defendant was even the most probable cause of their marital separation."
 

 However, it is well established that while the defendant's conduct must proximately cause the alienation of affections, this does not mean that the "defendant's acts [must] be the sole cause of alienation, as long as they were the controlling or effective cause."
 
 Nunn v. Allen,
 

 154 N.C.App. 523
 
 , 533,
 
 574 S.E.2d 35
 
 , 42 (2002) (citation an quotation marks omitted),
 
 disc. review denied,
 

 356 N.C. 675
 
 ,
 
 577 S.E.2d 630
 
 (2003). "[T]he plaintiff need not prove that [his] spouse had no affection for anyone else or that the marriage was previously one of untroubled bliss."
 
 McCutchen v. McCutchen,
 

 360 N.C. 280
 
 , 283,
 
 624 S.E.2d 620
 
 , 623 (2006) (citation, quotation marks, and brackets omitted). Rather, a plaintiff "only has to prove that his spouse had
 
 some
 
 genuine love and affection for him and that love and affection was lost as a result of defendant's wrongdoing."
 
 Brown v. Hurley,
 

 124 N.C.App. 377
 
 , 380-81,
 
 477 S.E.2d 234
 
 , 237 (1996).
 

 Plaintiff testified that there had been genuine love and affection between him and Ms. Hayes, explaining that
 

 [w]e had really fun times together. We did a lot of stuff together. And that never changed. We always had fun together. We always told each other we loved each other, continued to give each other a kiss before we went somewhere. You know, she would do certain sweet little things for me, and I'd do sweet little things for her.
 

 Plaintiff also testified that at the time of their marriage, Ms. Hayes "was the love of my life. We had a great relationship."
 

 Plaintiff acknowledged that they had experienced other problems in their marriage and referred in his testimony to the two prior occasions
 
 *447
 
 of infidelity by Ms. Hayes. But he also testified that they had participated in marriage counseling and "moved on from there." Plaintiff and Ms. Hayes both testified that throughout their marriage they would hold hands and tell each other they loved one another and that they maintained an active sex life.
 

 At trial, Plaintiff described the discovery of Ms. Hayes' affair with Defendant as being "different" from the prior affairs. Ms. Hayes told Plaintiff that she had "found someone" (referring to Defendant) and that she did not want to hide him from Plaintiff anymore. After returning from the Indiana trip, Ms. Hayes informed Plaintiff that their marriage was over.
 
 [2]
 

 The fact that a jury could conceivably have drawn different inferences from this evidence did not warrant the granting of Defendant's JNOV motion with regard to the jury's award of compensatory damages.
 
 See
 

 Jones v. Robbins,
 

 190 N.C.App. 405
 
 , 408,
 
 660 S.E.2d 118
 
 , 120 ("In reviewing motions ... for judgment notwithstanding the verdict, this Court examines the evidence in the light most favorable to the non-moving party, giving that party the benefit of every reasonable favorable inference, and determines whether there was sufficient evidence to submit the
 
 *616
 
 issue to the jury.... The reviewing court does not weigh the evidence or assess credibility, but takes the [nonmovant's] evidence as true, resolving any doubt in their favor." (internal citations and quotation marks omitted)),
 
 disc. review denied,
 

 362 N.C. 472
 
 ,
 
 666 S.E.2d 120
 
 (2008). Thus, applying-as we must-the well-settled standard for reviewing a trial court's ruling on a motion for JNOV, we conclude that Plaintiff presented more than a scintilla of evidence that there was genuine love and affection between himself and Ms. Hayes and that Defendant proximately caused the alienation of that love and affection. Therefore, the trial court did not err in denying Defendant's motion for JNOV.
 

 B. Defendant's Motions under Rules 59 and 60
 

 Defendant next contends that the trial court erred by denying his alternative motions based on Rules 59 and 60. He first asserts that based on "the inappropriate statements of Plaintiff's counsel during his final closing argument" he was either entitled to relief from judgment pursuant to Rule 60 or entitled to a new trial under Rule 59. He then argues
 
 *448
 
 that the jury's award of damages-which he claims was excessive and appears "to have been given under the influence of passion or prejudice"-requires a new trial pursuant to Rule 59(a)(6). We address each of Defendant's arguments in turn.
 

 1. Plaintiff's Closing Argument
 

 This Court reviews a trial court's rulings both on motions seeking a new trial under Rule 59 and motions for relief pursuant to Rule 60(b) for abuse of discretion.
 
 See
 

 Davis v. Davis,
 

 360 N.C. 518
 
 , 523,
 
 631 S.E.2d 114
 
 , 118 (2006) ("It has been long settled in our jurisdiction that an appellate court's review of a trial judge's discretionary ruling either granting or denying a motion to set aside a verdict and order a new trial is strictly limited to the determination of whether the record affirmatively demonstrates a manifest abuse of discretion by the judge.... As with Rule 59 motions, the standard of review of a trial court's denial of a Rule 60(b) motion is abuse of discretion." (citation and quotation marks omitted)).
 

 In the present case, Defendant argues that various statements made by Plaintiffs counsel during closing arguments (1) "constitute[d] surprise within the meaning of Rule 60(b)(1)" because he did not have an opportunity to address the misstatements before the jury deliberated; (2) amounted to misconduct by an adverse party under Rule 60(b)(3) ; or (3) qualify as a ground justifying relief pursuant to Rule 60(b)(6). His request, in the alternative, for a new trial pursuant to Rule 59 is based on these same grounds. Consequently, we address simultaneously the trial court's rulings denying Defendant's motions under both Rule 59 and Rule 60.
 

 In making a closing argument, "an attorney has latitude to argue all the evidence to the jury, with such inferences as may be drawn therefrom; but he may not travel outside the record and inject into his argument facts of his own knowledge or other facts not included in the evidence."
 
 Smith v. Hamrick,
 

 159 N.C.App. 696
 
 , 698,
 
 583 S.E.2d 676
 
 , 678 (citation and quotation marks omitted),
 
 disc. review denied,
 

 357 N.C. 507
 
 ,
 
 587 S.E.2d 674
 
 (2003). While attorneys are prohibited from expressing personal opinions during closing argument, they may argue to the jury why a witness should be believed or disbelieved.
 
 State v. Augustine,
 

 359 N.C. 709
 
 , 725,
 
 616 S.E.2d 515
 
 , 528 (2005),
 
 cert. denied,
 

 548 U.S. 925
 
 ,
 
 126 S.Ct. 2980
 
 ,
 
 165 L.Ed.2d 988
 
 (2006). Challenged "statements contained in closing arguments to the jury are not to be placed in isolation or taken out of context on appeal. Instead, on appeal we must give consideration to the context in which the remarks were made and the overall factual circumstances to which they referred."
 

 *449
 

 State v. Jaynes,
 

 353 N.C. 534
 
 , 559,
 
 549 S.E.2d 179
 
 , 198 (2001) (citation omitted),
 
 cert. denied,
 

 535 U.S. 934
 
 ,
 
 122 S.Ct. 1310
 
 ,
 
 152 L.Ed.2d 220
 
 (2002)
 
 518 U.S. 1024
 
 ,
 
 116 S.Ct. 2563
 
 ,
 
 135 L.Ed.2d 1080
 
 (1996). When a party argues on appeal that remarks made during closing argument misrepresented the evidence offered at trial or the applicable law, he must also demonstrate that he was prejudiced by the alleged misrepresentations.
 
 See
 

 State v. Trull,
 

 349 N.C. 428
 
 , 451-52,
 
 509 S.E.2d 178
 
 , 193-94 (1998),
 
 cert. denied,
 

 528 U.S. 835
 
 ,
 
 120 S.Ct. 95
 
 ,
 
 145 L.Ed.2d 80
 
 (1999).
 

 *617
 
 The portions of Plaintiff's closing argument challenged by Defendant on appeal fall into two general categories: (1) contentions regarding the credibility of Defendant's and Ms. Hayes' trial testimony; and (2) alleged factual inaccuracies or misrepresentations of the evidence. With regard to the statements concerning the credibility of Defendant and Ms. Hayes, Defendant asserts that Plaintiffs counsel's discussion of the sequestration of Ms. Hayes during trial, his questioning of her ability to testify truthfully, and his referral to Defendant as a "con man" were so egregious as to require relief from judgment or a new trial. Defendant also claims that Plaintiff's counsel's inaccurate remarks concerning the extent of Ms. Hayes' legal knowledge, Defendant's status as her supervisor at work, Defendant's perception of their affair, and several other topics covered during the trial were unfairly prejudicial and likewise entitled
 
 him
 
 to relief pursuant to Rules 59 or 60.
 

 An attorney is permitted to argue to the jury that certain witnesses should be deemed credible.
 
 Augustine,
 

 359 N.C. at 725
 
 ,
 
 616 S.E.2d at 528
 
 . "Similarly, a lawyer can argue to the jury that they should not believe a witness."
 

 Id.
 

 (citation and quotation marks omitted). However, "[i]t is improper for a lawyer to assert his opinion that a witness is lying."
 
 State v. Locklear,
 

 294 N.C. 210
 
 , 217,
 
 241 S.E.2d 65
 
 , 70 (1978).
 

 Here, defense counsel stated during Defendant's closing argument that because Ms. Hayes was sequestered and not present in the courtroom during Defendant's testimony "[s]he didn't know what he said. There was no opportunity to collude. She was outside of this courtroom. Think about that as you consider the credibility of these witnesses."
 

 In Plaintiff's closing argument, his counsel stated that "opposing counsel talks about the fact that Ms. Hayes was sequestered. Sequestration is a pretty important tool for lawyers. When lawyers are concerned that someone might have an issue or a loose relationship with the truth, you can set them into the hallway." In addition, Plaintiff's counsel later stated that "Ms. Hayes's ability to speak the truth is questionable at best."
 

 *450
 
 While we take note of the fact that it was Defendant's counsel who initially raised the issue of Ms. Hayes' sequestration as a reason why the jury should believe her testimony and that Plaintiff's counsel was entitled to respond with arguments as to why the jury should not find her credible, we believe that the remarks by Plaintiff's counsel concerning Ms. Hayes' sequestration and her truthfulness constituted impermissible opinions as to her credibility and thus constituted improper argument. However, based on our review of Plaintiff's closing argument in its entirety, we do not believe that these improper statements were sufficiently egregious so as to entitle Defendant to relief under Rule 59 or 60. Consequently, the trial court did not abuse its discretion in denying Defendant's motions based on these portions of Plaintiffs closing argument.
 

 Indeed, we note that Defendant's counsel did not object to these statements during Plaintiff's closing argument.
 
 See generally
 

 State v. Taylor,
 

 362 N.C. 514
 
 , 545,
 
 669 S.E.2d 239
 
 , 265 (2008) (explaining that appellate courts will not conclude that trial court abused its discretion in failing to intervene regarding "an argument that defense counsel apparently did not believe was prejudicial when originally spoken" unless statement constituted an "extreme impropriety" (citation and quotation marks omitted)),
 
 cert. denied,
 

 558 U.S. 851
 
 ,
 
 130 S.Ct. 129
 
 ,
 
 175 L.Ed.2d 84
 
 (2009).
 

 Likewise, while this Court does not condone "name-calling" during closing argument, we cannot agree that the characterization of Defendant by Plaintiff's counsel as a "con man" was sufficiently egregious when read contextually so as to warrant a new trial or relief from judgment.
 
 See
 

 State v. Frink,
 

 158 N.C.App. 581
 
 , 591,
 
 582 S.E.2d 617
 
 , 623 (2003) (noting that "name-calling" during closing remarks is improper but does not constitute prejudicial error unless appealing party can demonstrate that a different result probably would have been reached had the remark not been made),
 
 appeal dismissed and disc. review denied,
 

 358 N.C. 547
 
 ,
 
 599 S.E.2d 565
 
 (2004).
 

 *618
 
 With regard to the alleged misrepresentations of testimony by Plaintiff's counsel, we believe that the bulk of the statements cited by Defendant on appeal were permissible inferences from the evidence-arguments by Plaintiff's counsel that certain evidence should be construed in a manner that would support the elements of Plaintiff's claim. Such arguments are proper during a closing argument.
 
 See
 

 State v. Bates,
 

 343 N.C. 564
 
 , 590,
 
 473 S.E.2d 269
 
 , 283 (1996) ("Counsel is permitted to argue the facts which have been presented, as well as reasonable inferences which can be drawn therefrom."),
 
 cert. denied,
 

 519 U.S. 1131
 
 ,
 
 117 S.Ct. 992
 
 ,
 
 136 L.Ed.2d 873
 
 (1997).
 

 *451
 
 After carefully reviewing the remaining challenged statements from Plaintiff's closing argument, we have found no remark that required the trial court to grant Defendant relief from judgment under Rule 60(b) or a new trial pursuant to Rule 59. Nor do we believe that the cumulative effect of any inaccuracies in the remarks of Plaintiff's counsel entitled Defendant to such relief.
 

 We note that immediately following the arguments, the trial court properly instructed the jury that the statements of Plaintiffs and Defendant's counsel were merely comments on the evidence for the jurors to consider and that "[they] and [they] alone determine what the evidence shows or fails to show." We therefore overrule Defendant's argument that the trial court abused its discretion in denying Defendant's motions under Rules 59 and 60 based on the statements made during Plaintiffs closing argument.
 

 2. Amount of Compensatory Damages
 

 Finally, Defendant makes a cursory argument in his brief that "[t]he damages awarded by the jury are disproportionate to Defendant's conduct and any injury suffered by Plaintiff" such that "granting relief under N.C.R. Civ. P. 59(a)(6) is warranted." Rule 59(a)(6) permits the trial court to grant a new trial "on all or part of the issues" when "[e]xcessive or inadequate damages appearing to have been given under the influence of passion or prejudice" were awarded. N.C.R. Civ. P. 59(a)(6).
 

 Here, Defendant argues that Plaintiff failed to offer any evidence supporting an award of compensatory damages. In
 
 Nunn,
 
 the defendant made a similar argument, contending that the trial court had erred in denying his motion for a new trial based on the jury's allegedly unsupported award of compensatory damages.
 
 Nunn,
 

 154 N.C.App. at 534
 
 , 574 S.E.2d at 42-43. We rejected the defendant's argument, stating that this Court will not reverse a trial court's discretionary ruling on a motion for a new trial absent a showing of an abuse of discretion resulting in a substantial miscarriage of justice.
 
 Id.
 
 at 535, 574 S.E.2d at 43. We explained that with regard to an alienation of affections claim
 

 the measure of damages is the present value in money of the support, consortium, and other legally protected marital interests lost by plaintiff through the defendant's wrong. In addition thereto, plaintiff may also recover for the wrong and injury done to plaintiff's health, feelings, or reputation.
 

 Id.
 
 at 534, 574 S.E.2d at 43 (citation and brackets omitted).
 

 *452
 
 In the present case, Plaintiff offered evidence that due to the alienation of affections between himself and Ms. Hayes, he suffered both emotionally and financially. Plaintiff testified that he lost the support of Ms. Hayes' income and that the marital home went into foreclosure because he could not afford the mortgage payments on his salary alone. He further testified that he was "devastated" emotionally by the loss of Ms. Hayes' affections and the dissolution of their marriage. Plaintiff described the emotional impact of spending less time with his children because they no longer lived with him full time. He also testified that friends viewed and treated him differently as did others in the general community due to the deterioration of his relationship with Ms. Hayes and that the loss of Ms. Hayes' affections impacted his relationships with others.
 

 Thus, Plaintiff offered evidence that supported an award of compensatory damages, and the trial court did not manifestly abuse its discretion by denying Defendant a new trial. Moreover, Defendant has failed to demonstrate that the amount of compensatory
 
 *619
 
 damages awarded was excessive. Therefore, the trial court did not err in denying his motion under Rule 59(a)(6).
 

 II. Plaintiff's Cross-Appeal
 

 In his cross-appeal, Plaintiff argues that the trial court erred in partially granting Defendant's JNOV motion and setting aside the jury's award of punitive damages. As explained below, we conclude that this portion of the trial court's order must be reversed and that a remand to the trial court is necessary.
 

 In
 
 Scarborough v. Dillard's, Inc.,
 

 363 N.C. 715
 
 ,
 
 693 S.E.2d 640
 
 (2009),
 
 cert. denied,
 

 563 U.S. 988
 
 ,
 
 131 S.Ct. 2456
 
 ,
 
 179 L.Ed.2d 1211
 
 (2011), our Supreme Court discussed the duties of a trial court when reviewing a jury's award of punitive damages on a defendant's JNOV motion. As the Court explained, "[o]ur General Assembly has set parameters for the recovery of punitive damages through the enactment of Chapter 1D of the North Carolina General Statutes."
 
 Id.
 
 at 720,
 
 693 S.E.2d at 643
 
 . Chapter 1D allows punitive damages only if the claimant proves (1) that the defendant is liable for compensatory damages; and (2) the existence-by clear and convincing evidence-of an aggravating factor (fraud, malice, or willful or wanton conduct) related to the injury for which compensatory damages were awarded.
 

 Id.
 

 at 720-21
 
 ,
 
 693 S.E.2d at
 
 643 ;
 
 see also
 
 N.C. Gen. Stat. § 1D-15 (2015).
 

 Among the statutes contained in Chapter 1D is N.C. Gen. Stat. § 1D-50, which provides for judicial review of a punitive damages award and states as follows:
 

 *453
 
 When reviewing the evidence regarding a finding by the trier of fact concerning liability for punitive damages in accordance with G.S. 1D-15(a), or regarding the amount of punitive damages awarded, the trial court shall state in a written opinion its reasons for upholding or disturbing the finding or award. In doing so, the court shall address with specificity the evidence, or lack thereof, as it bears on the liability for or the amount of punitive damages, in light of the requirements of this Chapter.
 

 N.C. Gen. Stat. § 1D-50 (2015).
 

 As our Supreme Court held in
 
 Scarborough,
 
 the trial court has a statutory "role in ascertaining whether the evidence presented was sufficient to support a jury's finding of [an aggravating] factor under the standard established by the legislature[,]" which it is required to fulfill by entering a written opinion addressing
 
 with specificity
 
 the evidence concerning punitive damages and the basis for its decision to either uphold or set aside an award of punitive damages.
 
 Scarborough,
 
 363 N.C. at 721,
 
 693 S.E.2d at 644
 
 .
 

 [T]he language of the statute does not require findings of fact, but rather that the trial court "shall state in a written opinion its reasons for upholding or disturbing the finding or award. In doing so, the court shall address with specificity the evidence, or lack thereof, as it bears on the liability for or the amount of punitive damages." N.C.G.S. § 1D-50. That the trial court utilizes findings to address with specificity the evidence bearing on liability for punitive damages is not improper; the "findings," however, merely provide a convenient format with which all trial judges are familiar to set out the evidence forming the basis of the judge's opinion. The trial judge does not determine the truth or falsity of the evidence or weigh the evidence, but simply recites the evidence, or lack thereof, forming the basis of the judge's opinion. As such, these findings are not binding on the appellate court even if unchallenged by the appellant. These findings do, however, provide valuable assistance to the appellate court in determining whether as a matter of law the evidence, when considered in the light most favorable to the nonmoving party, is sufficient to be considered by the jury as clear and convincing on the issue of punitive damages.
 

 Id.
 

 at 722-23
 
 ,
 
 693 S.E.2d at 644-45
 
 .
 

 *454
 
 In
 
 Hudgins v. Wagoner,
 

 204 N.C.App. 480
 
 ,
 
 694 S.E.2d 436
 
 (2010),
 
 disc. review denied,
 

 365 N.C. 88
 
 ,
 
 706 S.E.2d 250
 
 (2011), the defendants argued that the trial court erred in denying their JNOV motion concerning an award of punitive damages because insufficient evidence existed for the award of such damages. Citing
 
 Scarborough,
 
 we reversed
 
 *620
 
 the trial court's denial of the defendants' JNOV motion as to the punitive damages award because the trial court had failed to enter a written opinion stating its reasons for upholding the award.
 
 Id.
 
 at 495,
 
 694 S.E.2d at 447-48
 
 . We concluded that it was necessary to "remand the matter to the trial court for entry of a written opinion with respect to the award of punitive damages as required by North Carolina General Statutes, section 1D-50 and explained by
 
 Scarborough
 
 [.]"
 

 Id.
 

 at 500
 
 ,
 
 694 S.E.2d at 450
 
 . In light of our holding that remand to the trial court was necessary, we did not address the parties' substantive arguments concerning the sufficiency of the evidence at trial to support a punitive damages award.
 

 Likewise, in
 
 Springs,
 
 the trial court failed to comply with N.C. Gen.Stat. § 1D-50 in its order denying the defendant's motion for JNOV and upholding the jury's punitive damages award. On appeal, this Court noted that it was bound by both
 
 Scarborough
 
 and
 
 Hudgins
 
 and held that
 

 [s]ince the trial court's order addressing defendants' motion for JNOV simply stated that the motion was denied without complying with N.C. Gen. Stat. § 1D-50, we must remand to allow the trial court to enter a written opinion setting out its reasons for upholding the punitive damages award. We cannot address the merits of [defendant's] arguments regarding the sufficiency of the evidence in the absence of the required written opinion.
 

 Id.
 
 at 281,
 
 704 S.E.2d at 326-27
 
 .
 

 Here, the trial court "disturb[ed]" the jury's award of punitive damages by vacating the award, but it did not "address with specificity" the evidence it found to be lacking on that issue. N.C. Gen. Stat. § 1D-50. Instead, the trial court merely stated in its order that the award of punitive damages must be set aside because the evidence was "insufficient." Consequently, as in
 
 Springs
 
 and
 
 Hudgins,
 
 we must remand to the trial court so that it may issue a written opinion setting forth its specific reasons for granting Defendant's JNOV motion regarding the punitive damages award and citing the evidence, or lack thereof, upon which it based its decision.
 

 *455
 

 Conclusion
 

 For the reasons stated above, we (1) affirm the portion of the trial court's 22 October 2014 order denying Defendant's motion for JNOV regarding the jury's award of compensatory damages on Plaintiffs alienation of affections claim; (2) reverse the portion of the trial court's 22 October 2014 order granting Defendant's JNOV motion and setting aside the award of punitive damages; and (3) remand for further proceedings consistent with this opinion.
 

 AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
 

 Chief Judge McGEE and Judge DILLON concur.
 

 [1]
 

 The record is unclear as to whether Defendant's children resided in North Carolina at that time or simply happened to be visiting North Carolina.
 

 [2]
 

 Defendant testified that at the time of trial he and Ms. Hayes were in an exclusive romantic relationship.