Haigh v. Superior Ins. Mgmt. Grp., Inc., 2017 NCBC 98.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
17 CVS 2582

MARSDEN HAIGH; ADAM DAVIS;
JARED SANSPREE; STEPHEN
CORLEY; and MLB1, LLC,

Plaintiffs,

v.

SUPERIOR INSURANCE
MANAGEMENT GROUP, INC.;
MATTHEW GARRETT MITCHELL;
DERICK JAMES PEGRAM; RICK
RYAN PEGRAM, II; and PROSPECT
AGENCY GROUP, INC.,

Defendants.

**ORDER AND OPINION ON
DEFENDANTS' MOTIONS TO
DISMISS**

1.      This case arises from two disputes between a franchisor, Defendant Superior Insurance Management Group, Inc. ("Superior Insurance"), and five of its franchisees, the Plaintiffs. The amended complaint asserts one set of claims based on allegations that Superior Insurance improperly negotiated direct commissions with insurance carriers, for its benefit and to Plaintiffs' detriment. In addition, the amended complaint asserts a second set of claims related to Plaintiffs' failed investments in Defendant Prospect Agency Group, Inc. ("Prospect").

2.      Superior Insurance and the individual Defendants ("Superior Insurance Defendants") have moved to dismiss most of the claims pursuant to North Carolina Rule of Civil Procedure 12(b)(6). Prospect has filed a separate Rule 12(b)(6) motion. This Court, having considered the motions, briefs supporting and opposing the motions, and the parties' arguments at the hearing on August 9, 2017, **DENIES**

Prospect's motion and **GRANTS in part** and **DENIES in part** the Superior

Insurance Defendants' motion.

> *Gray, Layton, Kersh, Solomon, Furr & Smith, P.A., by Christopher M. Whelchel and Marshall P. Walker, for Plaintiffs.*
>
> *Rayburn Cooper & Durham, P.A., by Ross R. Fulton and Tory Ian Summey, for Defendants Superior Insurance Management Group, Inc., Matthew Garrett Mitchell, Derick James Pegram, and Rick Ryan Pegram II.*
>
> *Bass Dunklin McCullough & Smith, PLLC, by Megan Sadler, for Defendant Prospect Agency Group, Inc.*

Conrad, Judge.

## I.
## BACKGROUND

3. The Court does not make findings of fact on a motion to dismiss under Rule 12(b)(6). The following factual summary is drawn from relevant allegations in the amended complaint and the attached exhibits.

### A. Superior Insurance Franchise Agreements

4. Established in 2009, Superior Insurance is a North Carolina corporation that sells insurance agency franchises. (First Am. Compl. ¶¶ 6, 11 ["Compl."], ECF No. 9.) The individual Defendants are Superior Insurance's founders and officers: Rick Ryan Pegram, II ("Ryan Pegram") is the President; Matthew Garrett Mitchell is a Senior Vice President; and Derick James Pegram ("Derick Pegram") is a Vice President. (Compl. ¶¶ 7–9.)

5. Plaintiffs Marsden Haigh, Adam Davis, Jared Sanspree, and Stephen Corley are former college classmates of one or more of the individual Defendants. (*See* Compl. ¶¶ 17, 20, 23, 26.) Between 2009 and 2011, each individual Plaintiff

entered into an agreement to open a Superior Insurance office in North Carolina ("2009-2011 Agreements"). (Compl. ¶ 16.) In 2013, Davis, Corley, and Sanspree formed Plaintiff MLB1, LLC, which entered into its own franchise agreement with Superior Insurance ("2013 Agreement"). (Compl. ¶ 27, Ex. 4.)

6. The 2009-2011 Agreements are substantially similar form agreements. (*See* Compl. ¶ 26 n.2, Exs. 1–3.) Haigh, Davis, Sanspree, and Corley agreed to pay a $300,000 purchase price, either in a lump sum or through a financing arrangement. (Compl. ¶ 31, Exs. 1–3.) In return, each Plaintiff is entitled to receive commissions from insurance carriers (*e.g.*, Nationwide or National General) for the sale of insurance policies. (*See* Compl. ¶ 33.) The individual Plaintiffs pay a percentage of their total monthly commissions to Superior Insurance, which "has the right to negotiate" these commissions on Plaintiffs' behalf. (*See* Compl. ¶¶ 33, 35, Ex. 1 ¶ 12.) According to the complaint, the parties intended "that any and all commissions from insurance carriers for policies sold and issued were to go to Plaintiffs (the franchisees) who, in turn, would pay over a specified percentage of their total commissions (in effect, a royalty)" to Superior Insurance each month. (Compl. ¶ 34.)

7. The 2013 Agreement between MLB1 and Superior Insurance is structured differently. Superior Insurance waived the initial franchise fee, is entitled to receive a higher percentage of MLB1's monthly commissions, and may receive "overrides" from insurance carriers. (Compl. ¶¶ 42–44, Ex. 4 ¶ 8(j).) The 2013 Agreement also includes a "Franchise Disclosure Document" (which the 2009-2011 Agreements lacked). (*See* Compl. ¶ 44; *see also* Compl. ¶¶ 28–30.) This document states that

Superior Insurance will negotiate commissions with the insurance carriers, that "all commissions are paid directly to" MLB1 by the insurance carriers, and that Superior Insurance, "in turn, receive[s] compensation from" MLB1. (Compl. ¶¶ 44–45 (emphasis omitted).)

8. Since entering into these agreements, Plaintiffs have not received an increase in their commissions. (Compl. ¶ 48.) Plaintiffs believe that Superior Insurance has not attempted to renegotiate commissions with any insurance carrier. (Compl. ¶ 48.) As a result, "Plaintiffs have attempted to individually renegotiate their commissions with insurance carriers," but Superior Insurance "has effectively prohibited Plaintiffs from engaging in such discussions." (Compl. ¶ 50.)

9. In addition, Plaintiffs allege that Defendants have abused their authority to negotiate commissions by securing direct commissions for themselves. (*See* Compl. ¶¶ 52, 54–55, 57, 59–60.) Approximately two years before filing this lawsuit, "Plaintiffs began hearing rumors that [Superior Insurance], in addition to receiving a percentage of the commissions paid to Plaintiffs, had a *direct* commission arrangement with the insurance carriers based on the policies sold by the Plaintiffs." (Compl. ¶ 52.) Although Superior Insurance representatives initially denied these rumors and "refused to discuss any specifics of any direct arrangement with insurance carriers," (Compl. ¶ 56), Derick Pegram later confirmed that Superior Insurance was receiving direct commissions, (Compl. ¶ 57).

## B. Prospect Investments

10. In March 2014, the individual Defendants, along with third-party Christopher Gregg Thomas, created Prospect. (Compl. ¶ 68.) Prospect is a Wyoming corporation with its principal place of business in Colorado. (Compl. ¶ 68.)

11. Prior to the creation of Prospect, Defendants solicited Plaintiffs to invest in the company. (Compl. ¶ 69.) At Superior Insurance's annual meeting in Charlotte, North Carolina in January 2014, Plaintiffs were given a form that identified three stock option plans and were told by Defendants that they must decide whether to invest by the end of the meeting. (*See* Compl. ¶¶ 69–70, 72–73.) The form bore the logos for Superior Insurance and Prospect. (Compl. ¶ 70.) Though initially hesitant, each Plaintiff agreed to invest in Prospect after Defendants represented that they would also be investing in the company and that Plaintiffs would receive a return on their investment that would "exceed[] their initial investment." (Compl. ¶¶ 74, 77–79.) Defendants further announced that Thomas would be the President of Prospect and "was a successful businessman who had recently sold his prior company for 'millions of dollars.'" (Compl. ¶ 76.)

12. In August 2016, Plaintiffs learned that Prospect was insolvent, and that the individual Defendants never invested in Prospect. (Compl. ¶¶ 81–82.) Plaintiffs believe that Defendants solicited their investments "so that the individual Defendants would not have to put forward their own financial capital and [could] still receive a financial return and ownership in Prospect." (Compl. ¶ 84.) Plaintiffs further allege that Thomas was not a successful businessman but had defrauded

investors in previous endeavors in addition to declaring bankruptcy. (*See* Compl. ¶¶ 86–93.)

## C. Procedural History

13. Plaintiffs filed this action on February 13, 2017 and amended their complaint on April 26, 2017 as a matter of right. The amended complaint includes seven causes of action related to the Superior Insurance franchise agreements. It includes four additional causes of action related to the Prospect investments, for fraud and securities violations.

14. The Superior Insurance Defendants moved to dismiss most of these claims on May 26, 2017. (Defs.' Mot. to Dismiss Am. Compl., ECF No. 15.) Prospect filed a separate motion to dismiss on July 24, 2017. (Prospect's Mot. to Dismiss, ECF No. 28.) Both motions have been fully briefed.

15. The Court held a hearing on the Superior Insurance Defendants' motion on August 9, 2017. (Am. Notice of Hearing, ECF No. 27.) In its discretion, the Court elects to decide Prospect's motion, which raises overlapping arguments, without holding a separate hearing. (*See* Prospect's Mem. in Supp. 1 n.1 ["Prospect's Mem."], ECF No. 29.) These motions are now ripe for resolution.

## II.
## ANALYSIS

16. A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of the complaint." *Concrete Serv. Corp. v. Inv'rs Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986). "Dismissal of a complaint under Rule 12(b)(6) is proper when one of the following three conditions is satisfied: (1) when the complaint on its face reveals

that no law supports plaintiff's claim; (2) when the complaint on its face reveals the absence of fact sufficient to make a good claim; (3) when some fact disclosed in the complaint necessarily defeats plaintiff's claim." *Jackson v. Bumgardner*, 318 N.C. 172, 175, 347 S.E.2d 743, 745 (1986).

17. In deciding a Rule 12(b)(6) motion, the Court must treat the well-pleaded allegations of the complaint as true and view the facts and permissible inferences "in the light most favorable to" the non-moving party. *Ford v. Peaches Entm't Corp.*, 83 N.C. App. 155, 156, 349 S.E.2d 82, 83 (1986); *see also Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970). "[T]he court is not required to accept as true any conclusions of law or unwarranted deductions of fact." *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 56, 554 S.E.2d 840, 844 (2001).

18. The Court may consider documents "attached to and incorporated within" the pleadings without converting a Rule 12(b)(6) motion into one for summary judgment. *Weaver v. St. Joseph of the Pines, Inc.*, 187 N.C. App. 198, 204, 652 S.E.2d 701, 707 (2007).

A. Superior Insurance Claims

19. Plaintiffs' complaint contains seven causes of action related to the Superior Insurance franchise agreements. Five causes of action—unfair or deceptive trade practices, breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, and declaratory judgment—are asserted against only Superior Insurance. Plaintiffs' claims for fraud and negligent misrepresentation are asserted against Superior Insurance and the individual Defendants.

1. Unfair or Deceptive Trade Practices

20.     To state a claim under N.C. Gen. Stat. § 75-1.1, "a plaintiff must show: (1) [the] defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Bumpers v. Cmty. Bank of N. Va.*, 367 N.C. 81, 88, 747 S.E.2d 220, 226 (2013).  Plaintiffs allege that Superior Insurance violated section 75-1.1, first, by "failing to provide the required disclosure statements under" federal regulations governing franchisors and, second, by "negotiating and failing to specifically disclose its hidden commission arrangement with" insurance carriers.  (Compl. ¶¶ 96–97.)

21.     Superior Insurance contends that Plaintiffs' first theory is barred by the statute of limitations.  (Defs.' Mem. in Supp. Mot. to Dismiss 6–7 ["Superior Defs.' Mem."], ECF No. 16.)  "A statute of limitations defense may properly be asserted in a Rule 12(b)(6) motion to dismiss if it appears on the face of the complaint that such a statute bars the claim."  *Birtha v. Stonemor, N.C., LLC*, 220 N.C. App. 286, 292, 727 S.E.2d 1, 6–7 (2012).

22.     A plaintiff must file its section 75-1.1 claim "within four years after the cause of action accrues."  N.C. Gen. Stat. § 75-16.2.  Here, the source of the alleged violation is the Federal Trade Commission's Franchise Rule, which provides "it is an unfair or deceptive act or practice . . . [f]or any franchisor to fail to furnish a prospective franchisee with a copy of the franchisor's current disclosure document" prior to entering a franchise agreement.  FTC Franchise Rule, 16 C.F.R. § 436.2(a).  The complaint alleges that Superior Insurance failed to provide this information prior

to entering into the franchise agreements with Haigh, Davis, Sanspree, and Corley. (Compl. ¶ 30.) Each individual Plaintiff's cause of action therefore accrued at the time of the agreements, the last of which was executed in 2011. This action, filed in February 2017, falls well outside the four-year limitations period.

23. The discovery rule does not save the individual Plaintiffs' claim, as they contend. (Pls.' Resp. in Opp'n 2 ["1st Opp'n"], ECF No. 21.) The discovery rule "tolls the running of the statute of limitations for torts resulting in certain latent injuries," such as fraud. *Misenheimer v. Burris*, 360 N.C. 620, 622, 637 S.E.2d 173, 175 (2006). Failure to comply with the Franchise Rule is not a latent wrong. Rather, federal law provides notice to franchisors and franchisees that the necessary disclosure must be made within a certain timeframe. Superior Insurance's failure to provide the disclosure and the resulting Franchise Rule violation were "necessarily apparent to the plaintiffs before they signed their franchise agreements." *Randall v. Lady of Am. Franchise Corp.*, 532 F. Supp. 2d 1071, 1097 (D. Minn. 2007) (holding statute of limitations barred claim for Franchise Rule violation under Florida Deceptive and Unfair Trade Practices Act); *see also Rich Food Servs., Inc. v. Rich Plan Corp.*, No. 5:99-CV-677-BR, 2002 U.S. Dist. LEXIS 27799, at *27 (E.D.N.C. Nov. 11, 2002) (discovery rule did not toll statute of limitations on a section 75-1.1 claim because plaintiffs should have known franchise rules and regulations upon entering the agreement), *aff'd* 98 F. App'x 206 (4th Cir. 2004).

24. On the face of the complaint, it is clear that any cause of action based on a violation of the Franchise Rule accrued at the time of the 2009-2011 Agreements. As

a result, the individual Plaintiffs' section 75-1.1 claim is untimely to the extent it is based on Superior Insurance's alleged failure to provide the required disclosure statements.

25. Plaintiffs' second theory is that Superior Insurance violated section 75-1.1 by "negotiating and failing to specifically disclose its hidden commission arrangement with" insurance carriers. (Compl. ¶¶ 96–97.) This theory, though difficult to discern, appears to be based on the same allegations underlying Plaintiffs' claims for fraud and breach of contract. In a footnote, Superior Insurance points to its challenges to the claims for fraud and breach of contract and argues that the section 75-1.1 claim should be dismissed for the same reasons. (*See* Superior Defs.' Mem. 7 n.3.) The Court addresses those arguments in sections II(A)(2) and II(A)(5) below, in both instances denying Superior Insurance's motion. Because Plaintiffs have adequately stated a claim for fraud, the Court also concludes, at this stage, that Plaintiffs have adequately alleged that Superior Insurance committed an unfair or deceptive act, to the extent based on hidden commissions. *See Media Network, Inc. v. Mullen Advert., Inc.*, 2007 NCBC LEXIS 1, at *45 (N.C. Super. Ct. Jan. 19, 2007) (noting that allegations of fraud are typically sufficient to state a claim under section 75-1.1).

2. Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing

26. Plaintiffs allege that Superior Insurance breached the 2009-2011 Agreements and the 2013 Agreement in two ways. One allegation is that Superior Insurance improperly solicited Plaintiffs' customers. (Compl. ¶ 103.) Superior Insurance makes no argument as to this allegation. (*See generally* Superior Defs.'

Mem. 7–10; Superior Reply 8–10, ECF No. 24.) Accordingly, there is no basis to dismiss the claim for breach of contract to the extent it concerns any non-solicitation provision.

27. Plaintiffs' second allegation is that Superior Insurance breached the 2009-2011 Agreements and the 2013 Agreement by "negotiating and receiving its own direct commission[s] with the insurance carriers." (Compl. ¶ 102.) In addition, in their claim for breach of the covenant of good faith and fair dealing, Plaintiffs allege that Superior Insurance "acted in bad faith with respect to the Agreements by negotiating and receiving its own direct commission[s] from the insurance carriers." (Compl. ¶ 108.) Viewing these allegations in light of Plaintiffs' brief, it is clear that the claim for breach of contract is the same as the claim for breach of the implied covenant of good faith and fair dealing. (*See* Compl. ¶ 108; *see also* 1st Opp'n 8.) For the purpose of resolving this motion, the Court analyzes the two claims as one.

28. To state a claim for breach of contract, a party must allege that there is a valid contract and that a term of the contract was breached. *See Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000). Contracts contain implied terms in addition to and consistent with the contract's express terms for the purpose of effectuating the intent of the parties to the contract. *See Maglione v. Aegis Family Health Ctrs.*, 168 N.C. App. 49, 56, 607 S.E.2d 286, 291 (2005). Thus, courts require parties to act in good faith "to accomplish the purpose of" the contract. *Id.* This means that the parties to a contract must "make reasonable efforts to perform [their] obligations under" the contract, *id.*, and must not "do anything which injures the right

of the other [party] to receive the benefits of the agreement." *Bicycle Transit Auth., Inc. v. Bell*, 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985).

29. Superior Insurance contends that the language of the agreements expressly allows them to receive direct commissions and that the implied covenant of good faith and fair dealing cannot contradict these express terms. (*See* Superior Defs.' Mem. 9–11.) For Superior Insurance to prevail at the 12(b)(6) stage, the contract language must necessarily defeat Plaintiffs' claim. *See Jackson*, 318 N.C. at 175, 347 S.E.2d at 745.

30. Superior Insurance fails to satisfy this standard. It relies on two provisions in the 2009-2011 Agreements. The first states that Superior Insurance makes "no representation with respect to contracts, arrangements and insurance programs with" its clients "or with respect to contracts, arrangements and insurance programs between [Superior Insurance] and the insurance companies represented by" it. (Compl. Ex. 1 ¶ 6.) The second states that "[a]ny negotiated commissions, contingencies, higher payments from insurance carriers or other entities etc. will be deferred to [Superior Insurance]" and that Superior Insurance "has the right to negotiate on" behalf of the franchisees. (Compl. Ex. 1 ¶ 12.)

31. It is unclear why Superior Insurance believes either provision supports its position. Neither expressly addresses direct commissions, yet Superior Insurance relies on the bare text without further analysis or interpretation. (*See* Superior Defs.' Mem. 8; Superior Reply 9–10.) Plaintiffs advocate their own interpretations of these provisions, under which Superior Insurance would not be entitled to direct

commissions. (*See* 1st Opp'n 5.) In the absence of a contrary interpretation supported by reasoned analysis, the Court is unable to conclude at this stage that either provision clearly defeats Plaintiffs' claim.

32. With respect to the 2013 Agreement, Superior Insurance relies on the provision that entitles it to "all overrides and contingencies from all insurance related products." (Superior Defs.' Mem. 9; Compl. Ex. 4 ¶ 8(j).) Superior Insurance argues that this provision entitles it to direct commissions because commissions and overrides are the same. The term overrides is undefined, however, and the Franchise Disclosure Document, which states MLB1 shall receive all commissions, suggests that overrides and commissions are different. At a minimum, there is a factual dispute over whether the payments that Superior Insurance receives from insurance carriers are either impermissible direct commissions or permitted overrides. The Court may not resolve this factual dispute at the Rule 12(b)(6) stage. *See, e.g.*, *USConnect, LLC v. Sprout Retail, Inc.*, 2017 NCBC LEXIS 37, at *21 (N.C. Super. Ct. Apr. 21, 2017).

33. Finally, Superior Insurance argues that the three-year statute of limitations bars "[a]ny claim for breach of contract from prior to February 13, 2014." (Superior Defs.' Mem. 9–10.) A claim for breach of contract accrues "at the time of notice of the breach." *Flanders/Precisionaire Corp. v. Bank of N.Y. Mellon Trust Co.*, 2015 NCBC LEXIS 36, at *17 (N.C. Super. Ct. Apr. 7, 2015). As alleged, Plaintiffs first received notice of the breach approximately two years before the filing of the complaint, through a combination of rumors and, when confronted, Superior Insurance's own

admission. (Compl. ¶¶ 52, 57.) The Court cannot conclude from the face of the amended complaint that Plaintiffs had notice of the alleged breaches before February 13, 2014. *See Ludlum v. State*, 227 N.C. App. 92, 94, 742 S.E.2d 580, 583 (2013) (statute of limitations is three years).

34. The Court denies the motion to dismiss the claims for breach of contract and breach of the covenant of good faith and fair dealing.

3. Breach of Fiduciary Duty

35. Plaintiffs allege that Superior Insurance owed them a fiduciary duty and breached that duty by negotiating direct commissions for itself. (*See* Compl. ¶¶ 111–12.)

36. "For a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties." *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001). A fiduciary relationship exists when a person places special confidence in a party who "is bound to act in good faith and in the best interest of the" person reposing the confidence. *Lynn v. Fed. Nat'l Mortg. Ass'n*, 235 N.C. App. 77, 81, 760 S.E.2d 372, 375 (2014). North Carolina courts have identified two types of fiduciary relationships. The first type "arise[s] from 'legal relations'"—attorney and client, partners, principal and agent, and similar relationships. *S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC*, 189 N.C. App. 601, 613, 659 S.E.2d 442, 451 (2008) (quoting *Rhone-Poulenc Agro S.A. v. Monsanto Co.*, 73 F. Supp. 2d 540, 546 (M.D.N.C. 1999)). The second type includes relationships "that exist 'as a fact, in which there is

confidence reposed on one side, and the resulting superiority and influence on the other."' *Id.*

37. The complaint alleges that a fiduciary relationship exists, as a matter of law, because Superior Insurance "acted as Plaintiffs' agent" in negotiating commissions with insurance carriers. (Compl. ¶ 111.) The "critical element of an agency relationship," however, is the principal's right to control the agent. *Coastal Plains Utils., Inc. v. New Hanover Cty.*, 166 N.C. App. 333, 344, 601 S.E.2d 915, 923 (2004). Plaintiffs do not allege that they hold the right to control Superior Insurance in carrying out negotiations with insurance carriers or in any other respect. In fact, the allegations confirm the absence of any control. (*See, e.g.*, Compl. ¶ 49 ("Defendants have refused to renegotiate . . .").) Accordingly, the facts alleged in the complaint defeat the claim for breach of fiduciary duty to the extent it is based on an agency relationship.

38. In their opposition brief, Plaintiffs argue that Superior Insurance's exclusive authority to negotiate commissions on Plaintiffs' behalf gives rise to a *de facto* fiduciary relationship. (*See* 1st Opp'n 13–14.) This new theory is not alleged in the amended complaint and therefore does not provide a basis to survive Rule 12(b)(6). (*See* Compl. ¶¶ 110–13.) "The requirement to liberally construe the complaint is not an invitation to rewrite it." *Brown v. Secor*, 2017 NCBC LEXIS 65, at *19 (N.C. Super. Ct. July 28, 2017).

39. In any event, to the extent the authority to negotiate on Plaintiffs' behalf imposes a duty on Superior Insurance, it does so as a result of the parties' *contractual*

relationship, not as a result of a *fiduciary* relationship. "As a general rule, parties to a contract 'owe no special duty to one another beyond the terms of the contract.'" *Charlotte-Mecklenburg Hosp. Auth. v. Wachovia Bank. N.A.*, 2009 NCBC LEXIS 33, at *8 (N.C. Super. Ct. Oct. 6, 2009) (quoting *Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 61, 418 S.E.2d 694, 699 (1992)). In this circumstance, Superior Insurance's duty to negotiate with insurance carriers in good faith is based on the terms of the franchise agreements and the implied covenant of good faith and fair dealing. The alleged breach of that covenant, which arises from contract law, is better resolved through contract principles, rather than general principles of fiduciary relationships.

40. Therefore, the Court grants the motion to dismiss the claim for breach of fiduciary duty. The claim is dismissed with prejudice.

4. Declaratory Judgment

41. Plaintiffs' declaratory-judgment claim is actually a request for seven different declarations, all having to do with aspects of the 2009-2011 Agreements and the 2013 Agreement. (*See* Compl. ¶ 130.) Plaintiffs seek three declarations that all or part of the franchise agreements are void. They seek two declarations regarding the amount of notice required to terminate the franchise agreements. And they seek two additional declarations as to the enforceability of non-compete covenants in the agreements.

42. Superior Insurance urges the Court to dismiss the entire claim for two principal reasons: first, "the Court is without jurisdiction to entertain Plaintiffs'

attempt to use the Declaratory Judgment Act as a vehicle for the nullification of written instruments," and second, "there is no actual controversy between the parties" as to the other requests for declaratory relief. (Superior Reply 14.)

43. "A motion to dismiss for failure to state a claim is seldom appropriate 'in actions for declaratory judgments, and will not be allowed simply because the plaintiff may not be able to prevail.'" *Morris v. Plyler Paper Stock Co.*, 89 N.C. App. 555, 557, 366 S.E.2d 556, 558 (1988) (quoting *N.C. Consumers Power, Inc. v. Duke Power Co.*, 285 N.C. 434, 439, 206 S.E.2d 178, 182 (1974)). Rather, a motion to dismiss a declaratory-judgment claim is appropriate only "'when the complaint does not allege an actual, genuine existing controversy,'" which prevents a court from entering a "purely advisory opinion." *Legalzoom.com, Inc. v. N.C. State Bar*, 2012 NCBC LEXIS 49, at *9 (N.C. Super. Ct. Aug. 27, 2012).

44. Superior Insurance relies on *Farthing v. Farthing* for the proposition that the Declaratory Judgment Act "is not a vehicle for the nullification of" written instruments. 235 N.C. 634, 635, 70 S.E.2d 664, 665 (1952). The North Carolina Court of Appeals has clarified that *Farthing* held only that "the validity of a will is a probate matter" and cannot be held void through a declaratory-judgment action. *Bueltel v. Lumber Mut. Ins. Co.*, 134 N.C. App. 626, 630, 518 S.E.2d 205, 208 (1999). "The validity of a contract, however, is a different matter," and this Court "certainly may determine the validity and enforceability of a contract under the Declaratory Judgment Act." *Id.*; *see also, e.g.*, *Townsend v. Harris*, 102 N.C. App. 131, 132, 401 S.E.2d 132, 133 (1991) (declaring a contingency fee agreement void as against public

policy).  Therefore, the Court denies the motion to dismiss the claim for declaratory relief to the extent Plaintiffs seek a declaration invalidating part or all of the franchise agreements.  (*See* Compl. ¶ 130(a)–(c).)

45.   The Court grants the motion to dismiss as to the four remaining requests for declaratory relief, all of which relate to the non-compete provisions or the amount of notice required to terminate the agreements.  As Superior Insurance points out, Plaintiffs have not alleged that they are competing with or intend to compete with Superior Insurance or that they intend to terminate the agreements.  (*See* Superior Defs.' Mem. 18–19.)  As a result, there is no actual, genuine controversy for the Court to resolve.  *See, e.g.*, *Sharpe v. Park Newspapers of Lumberton, Inc.*, 317 N.C. 579, 590, 347 S.E.2d 25, 32 (1986) (holding that, in a declaratory action regarding the validity of a non-compete, there must be "evidence of a practical certainty that the plaintiffs will compete with the defendant . . . or that they have the intention of doing so").

46.   Plaintiffs' response does not dispute this.  (*See* 1st Opp'n 17–18.)  They contend only that "there is an actual controversy" because "the parties are already in litigation."  (1st Opp'n 17.)  The fact that there is pending litigation on other issues does not obviate the need for a genuine controversy to support a separate claim for declaratory relief.  Therefore, the Court dismisses without prejudice the declaratory-judgment claim to the extent Plaintiffs seek declarations regarding the notice or non-compete provisions of the franchise agreements.

### 5. Fraud and Negligent Misrepresentation (Superior Insurance Franchise Agreements)

47. Plaintiffs assert alternative claims for fraud and negligent misrepresentation against the Superior Insurance Defendants based on a failure to disclose Superior Insurance's direct commission arrangement. (*See* Compl. ¶¶ 114–20, 121–27.) The Superior Insurance Defendants argue that both claims should be dismissed on identical grounds. (*See* Superior Defs.' Mem. 12–16; Superior Reply 11–14.)

48. In their briefing, Plaintiffs clarify that their fraud claim is a claim for fraud in the inducement. (1st Opp'n 15.) The elements of fraud in the inducement "are: (1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Media Network, Inc. v. Long Haymes Carr, Inc.*, 197 N.C. App. 433, 453, 678 S.E.2d 671, 684 (2009). All allegations of fraud must be pleaded with particularity. *See* N.C. R. Civ. P. 9(b). When, as here, the fraud claim is based on the defendant's failure to disclose information, the plaintiff must allege

> (1) the relationship [between plaintiff and defendant] giving rise to the duty to speak; (2) the event or events triggering the duty to speak and/or the general time period over which the relationship arose and the fraudulent conduct occurred; (3) the general content of the information that was withheld and the reason for its materiality; (4) the identity of those under a duty who failed to make such disclosures; (5) what [the defendant] gained by withholding information; (6) why plaintiff's reliance on the omission was both reasonable and detrimental; and (7) the damages proximately flowing from such reliance.

*W4 Farms, Inc. v. Tyson Farms, Inc.*, 2017 NCBC LEXIS 63, at *19 (N.C. Super. Ct. July 24, 2017).

49. The arguments asserted by the Superior Insurance Defendants are scattershot. They first contend that the economic loss rule precludes Plaintiffs' fraud claim because this dispute "is, at its heart, a dispute over the parties' rights under contracts." (Superior Defs.' Mem. 14.) The North Carolina Court of Appeals has rejected this argument. The economic loss rule does not bar claims for fraudulent inducement. *See Bradley Woodcraft, Inc. v. Bodden*, 795 S.E.2d 253, 259 (N.C. Ct. App. 2016).

50. The Superior Insurance Defendants next argue that Plaintiffs have not satisfied the reliance requirement. (Superior Defs.' Mem. 14–15; Superior Reply 12–13.) This argument is premised on the contract provisions discussed above. (Superior Defs.' Mem. 14–15.) As noted, Defendants do not explain how to interpret or apply these provisions. The Court further notes that Plaintiffs expressly alleged that "they would not have entered into the Agreements" if they knew that Superior Insurance "would be receiving its own direct commission from the insurers." (Compl. ¶ 119.)

51. The third argument is that the individual Defendants, who are the president and vice presidents of Superior Insurance, were under no duty to disclose information under the FTC's Franchise Rule. (*See* Superior Reply 13–14.) The parties' briefing on this point is slim, and the Court is not aware of any authority precluding individual liability for corporate officers that participate in a company's deceptive acts under the FTC Act and the Franchise Rule. *See F.T.C. v. Transnet Wireless Corp.*, 506 F. Supp. 2d 1247, 1252, 1270–72 (S.D. Fla. 2007) (discussing standards for individual liability

under FTC Act). At this stage of the litigation, dismissal of the claim as to the individual Defendants would be premature.

52. Finally, in their reply brief, the Superior Insurance Defendants argue that the statute of limitations bars the fraud claim to the extent it is based on a duty to disclose information under the Franchise Rule. (Superior Reply 11.) The Court disagrees. Plaintiffs' claims for fraud and for violation of the Franchise Rule are distinct. The latter concerns a failure to provide a disclosure statement of any kind within a specified timeframe. As noted, the discovery rule does not apply to this claim.

53. Plaintiffs' fraud claim, however, alleges that Superior Insurance concealed specific, material information with the intent to deceive—precisely the kind of latent harm for which the discovery rule tolls the statute of limitations. The three-year limitations period therefore began to run when Plaintiffs "discover[ed] or should have discovered the fraud." *Branch Banking & Trust Co. v. Lighthouse Fin. Corp.*, 2005 NCBC LEXIS 4, at *20 (N.C. Super. Ct. July 13, 2005); *see also* N.C. Gen. Stat. § 1-52(9). The complaint alleges that Plaintiffs became aware of the alleged direct commissions roughly two years before filing this lawsuit. (Compl. ¶ 52.) Accordingly, the Court cannot conclude from the face of the complaint that Plaintiffs' claim is untimely.

54. For these reasons, the Court denies the motion to dismiss Plaintiffs' fraud claim. The Court also denies the motion to dismiss Plaintiffs' alternative claim for negligent misrepresentation. Defendants offer no independent basis for dismissing

the negligent misrepresentation claim, apart from the arguments as to the fraud claim. In addition, it appears that discovery as to the fraud and negligent misrepresentation claims will "be the same, or at least substantially overlapping." *Veer Right Mgmt. Grp., Inc. v. Czarnowski Display Serv.*, 2015 NCBC LEXIS 13, at *8 (N.C. Super. Ct. Feb. 4, 2015). Thus, having determined that the fraud claim survives, the Court also denies the motion to dismiss the alternative claim for negligent misrepresentation.

## B. Fraud and Securities Fraud (Prospect)

55. Plaintiffs' eighth, ninth, and tenth claims for relief relate to fraud and securities violations against all Defendants with respect to investments made in Prospect. Defendants seek to dismiss the eighth and ninth claims (for fraud and securities fraud) solely on the ground that they are not alleged with "particularity sufficient to satisfy Rule 9(b)." (Superior Defs.' Mem. 20; Prospect's Mem. 3.) Superior Insurance and Prospect also seek to dismiss the tenth claim on the ground that the complaint does not allege that either "made any false statements relating to Prospect." (Superior Defs.' Mem. 22; Prospect's Mem. 5.)

56. Plaintiffs' claims for fraud and securities fraud must be pleaded with particularity. N.C. R. Civ. P. 9(b); *Skoog v. Harbert Private Equity Fund, II, LLC*, 2013 NCBC LEXIS 16, at *34 (N.C. Super. Ct. Mar. 25, 2013). This requirement "ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of." *Perkins v. HealthMarkets, Inc.*,

2007 NCBC LEXIS 25, at *14 (N.C. Super. Ct. July 30, 2017) (quoting *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 784 (4th Cir. 1999)).

57. To satisfy Rule 9(b)'s particularity requirement, Plaintiffs must allege the "time, place and content" of the misrepresentation, the "identity of the person making the representation," and "what was obtained as a result." *Terry v. Terry*, 302 N.C. 77, 85, 273 S.E.2d 674, 678 (1981). "The degree of particularity required to comply with Rule 9(b) varies from case to case." *McDonnell Douglas Corp. v. SCI Tech.*, 933 F. Supp. 822, 825 (E.D. Mo. 1996) (applying Fed. R. Civ. P. 9(b)). When evaluating the particularity requirement, the court should satisfy itself "(1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison*, 176 F.3d at 784.

58. The amended complaint satisfies this standard. Plaintiffs allege that the misrepresentations were made at a meeting in Charlotte, North Carolina in January 2014. (Compl. ¶ 69.) In addition, they allege that the three individual Defendants solicited Plaintiffs' investments in Prospect, falsely represented that they would be making their own investments in Prospect, and passed out forms with specific stock option plans. (Compl. ¶¶ 69, 70, 75.) The forms included the logos of both Superior Insurance and Prospect. (Compl. ¶ 70.) The complaint further alleges that each Plaintiff made an investment in Prospect and did so in reliance on Defendants' representations. (Compl. ¶ 78.)

59. In the context of this case, Plaintiffs' allegations plainly notify Defendants of the time and place of the meeting, the specific individuals involved in the meeting, and the nature of the alleged misrepresentations. *See Hudgins v. Wagoner*, 204 N.C. App. 480, 488–89, 694 S.E.2d 436, 443–44 (2010) (holding "that plaintiff sufficiently pleaded a cause of action for fraud"); *Perkins*, 2007 NCBC LEXIS 25, at *11–16 (holding that the plaintiffs alleged fraud with sufficient particularity). In addition, with respect to Superior Insurance and Prospect, Plaintiffs correctly observe that they were solicited to invest in Prospect at a Superior Insurance annual meeting with form solicitations that included the logos for both Superior Insurance and Prospect. (*See* 1st Opp'n 19.)

60. The allegations provide Defendants with notice of the "particular circumstances" for which they "will have to prepare a defense at trial." *Harrison*, 176 F.3d at 784. Therefore, the Court denies the motions to dismiss the fraud claim and the securities fraud claims related to the Prospect investments.

III.
CONCLUSION

61. The Court **DENIES** Prospect's motion to dismiss.

62. The Court **GRANTS in part** Superior Insurance Defendants' motion to dismiss as follows:

a. The unfair or deceptive trade practices claim is **DISMISSED with prejudice** to the extent it is based on a violation of the Franchise Rule;

b. The claim for breach of fiduciary duty is **DISMISSED with prejudice**; and

c.      The declaratory-judgment claim is **DISMISSED without prejudice** to the extent it concerns the non-compete and notice terms of the franchise agreements.

d.      In all other respects, the motion is **DENIED**.


This the 24th day of October, 2017.

                                        /s/ Adam M. Conrad
                                        Adam M. Conrad
                                        Special Superior Court Judge
                                          for Complex Business Cases